BLUEDORN v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

### In Banc, March 24, 1894.

1. **Railroad**: SWITCHMAN: CONTRIBUTORY NEGLIGENCE. Plaintiff, a railway switchman, while employed at night in switching a train in defendant's yard was struck by another train. The evidence showed that, in order to give a signal and in the proper discharge of his duties, he stepped over the track on which the colliding train was approaching and that, as he stepped back towards the train he was switching, he was struck by the other train. The latter could have been seen at a distance of one hundred and twenty feet away and plaintiff stepped on the track almost immediately in front of it. His attention was at the time directed to the engineer of the train he was switching. The train which struck him was running in violation of the city ordinance limiting the rate of speed to six miles an hour or less. *Held* that plaintiff was not guilty of contributory negligence as a matter of law and that the question of such negligence was properly one for the jury.

2. ———: ———: CITY ORDINANCE: PRESUMPTION: NEGLIGENCE. The fact that the train was running at an unlawful rate of speed when the accident occurred raises no presumption of law that the excessive speed caused the injury.

3. ———: ———: ———: SPECIAL DEFENSE. The railroad, in an action for injuries on the ground that its train was running at a rate of speed in excess of that fixed by the city ordinance, can not show that the ordinace was unreasonable or invalid unless such defense is specially pleaded.

4. **Practice**: JURY: TAKING PLEADINGS TO THE ROOM. The right of the jury to take the pleadings to their room is a matter within the discretion of the trial court and in the absence of some improper use of them, or harmf'l effect, the judgment will not be reversed for that reason.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

REVERSED AND REMANDED.

*John T. Cochran* and *H. S. Priest* for appellant.

(1) A verdict upon the pleadings and the evidence should have been directed for the defendant upon the grounds: *First,* of his contributory negligence; *second,* of the failure to associate in causal relation the speed of the train, and the plaintiff's injury. (*a*) Plaintiff admits that it was his positive duty to watch for and keep out of the way of this train as well as all others; that it was plain to be seen, at least, one hundred and twenty feet away; that he only saw it because its presence was forced upon him, and that he stepped upon the track when it was immediately upon him. This, coupled with the evidence of Carey, his own witness, to the fact that he stepped upon the track within ten or fifteen feet of the approaching train, is conclusive of his disregard of the duty which he recognizes himself, and his concurring negligence. *Bluedorn v. Railroad,* 108 Mo. 439; *Taylor v. Railroad,* 86 Mo. 458; *Yancy v. Railroad,* 93 Mo. 433. (*b*) If the plaintiff stepped upon the track so closely in front of the engine as, if running at a rate of speed of six miles per hour, it could not have been stopped, or so checked as to avoid the injury, then the excess of speed above that rate was not a cause. The evidence, beyond controversy, shows this to be the fact. *Jennings v. Railroad,* 99 Mo. 399; *Hanlon v. Railroad,* 104 Mo. 387; Wharton on Neg., secs. 302, 303, 323, 324. (2) The court erred in giving instruction number 1, of the plaintiff's series. Whether the court intended the presumption specified in the instruction to have the effect of a legal presumption or an inference of fact, is not disclosed by anything in the context. In either aspect, it is wrong. It would not be an incontrovertible legal presumption. If an inference from facts proved, it falls entirely within the province

of the jury. *Lynch v. Railroad*, 20 S. W. Rep. 642; *Moberly v. Railroad*, 98 Mo. 183; Wharton on Crim. Ev. [9 Ed.], sec. 207; *Ins. Co. v. Weide*, 11 Wall. 440. (3) The court erred in refusing to give instruction number 3 asked by the defendant. There was abundant evidence upon which to predicate it, and it contains sound legal propositions. *Abbott v. McCadden*, 51 N. W. Rep. 1079; *Bengston v. Railroad*, 50 N. W. Rep. 531; *Roddy v. Railroad*, 104 Mo. 234. (4) Instructions numbers 2 and 4 given and number 3 given, as modified by the court, assumed uncontradicted facts, and the action of the jury in returning a verdict against their direction, is such a palpable outrage as to indicate either gross imbecility, corruption or a blind and ungovernable prejudice against corporations, and for this reason, the verdict should be reversed. (5) The court erred in giving the pleadings to the jury to take with them when they retired to consider their verdict. The jury have nothing on earth to do with the pleadings. *Bryan v. Railroad*, 63 Iowa, 464; *Butcher v. Death*, 15 Mo. 270; *Harrison v. Hance*, 37 Mo. 187; *Flishman v. Miller*, 38 Mo. App. 181; *Proctor v. Loomis*, 35 Mo. App. 488; *Grant v. Railroad*, 25 Mo. App. 232; *Crocker v. Crocker*, 2 Mo. App. 458; *Hollis v. Ins. Co.*, 21 N. W. Rep. 774; *Willis v. Forest*, 2 Duer, 310; *Drew v. Andrews*, 8 How. 23; *Garfield v. Knight*, 14 Cal. 35. (6) The damages awarded by the jury are grossly excessive. (7) The court erred in refusing defendant's offer to prove that the business of its yards could not be done if it was required to conform to a maximum speed of six miles per hour.

*Z. J. Mitchell* for respondent.

(1) The instructions given in the case fairly presented the law to the jury and the latter is the sole

judge of the weight and import of the evidence. *Burger v. Railroad*, 112 Mo. 250; *Roddy v. Railroad*, 104 Mo. 234. (2) All the questions raised by appellant were passed on in the former appeal and are *res judicata*.

BURGESS, J.—This is an action for personal injuries. The case was before this court on a former appeal, and will be found reported in 108 Mo. 439, in which the facts as disclosed at the trial in the circuit court are stated by BLACK, C. J., as follows:

"This is an appeal prosecuted by the defendant from a judgment in favor of plaintiff in a personal damage suit. The plaintiff was injured by a passenger train, while in the employ of the defendant as a night switchman, so that it became necessary to amputate his leg between the knee and ankle. He founds his action on the violation of an ordinance of the city of St. Louis, which limits the rate of speed of trains to six miles per hour.

"The plaintiff had been engaged in railroad work for thirteen years, eleven years of that time in the capacity of a conductor on another road entering the city of St. Louis. He had been in the employ of the defendant as night switchman at the defendant's Seventeenth street yards in St. Louis for five nights preceding the night on which he received the injuries of which he complains. The accident occurred at night, between ten and eleven o'clock at a point near the Eighteenth street bridge. The Seventeenth street yards are just east of the Eighteenth street bridge. There is what is called a lead track extending from the Seventeenth street yards westward on a curve to the north under the bridge, and thence westward on a curve to the south, but the degree of these curves is not stated. There are three tracks passing under the bridge; the

first or south one is this lead track; the next one north of it is called the east bound main track, and to the north of that is the west bound main track. Both of these main tracks curve to the south after passing under the bridge going from the east to the west; but here again the degree of the curve is not stated. There is a spur track which leaves the middle or east bound track at a point just west of the bridge and extends westward between that track and the lead track. At the time of the accident there were cars standing on the spur track at a point west of but near the bridge.

"The plaintiff and his crew were engaged in moving a train of fifteen or more cars from the Seventeenth street yards. After the engine and some six or eight cars passed under the bridge going west the plaintiff got off on the ground and stepped north some six or eight feet to and across the middle or east bound track to a point some fifteen feet east of the bridge. He then looked west between the cars standing on the spur track and his train, then moving westward, and gave the engineer signals to stop and to back up. He then stepped back towards his train, and as he was clearing the east bound track his foot was caught by the pilot of the engine of an east bound passenger train, called the Kirkwood accommodation. It was necessary for the plaintiff to get off his train and step over the track as he did in order to get in line with his engineer so as to give the signals. He says he could not see the incoming passenger train until it passed around the cars standing on the spur, though some of his evidence tends to show that he could have seen the headlight of the engine drawing that train for a distance of one hundred and eighty feet from where he stood. He says he did not see the incoming train; that he just stepped across the track, gave his engineer a signal with his lantern to stop, then two signals to back up; that he

then started back and was caught; and that it was all the work of a minute or thirty seconds. He says he knew this Kirkwood train came in every night, but that he had no time card and did not know when it was due, and was not the foreman of his crew.

"The evidence of the plaintiff and that of another witness is to the effect that this Kirkwood train was moving at a rate of speed from twenty to twenty-two miles per hour. The conductor of that train gave it as his opinion that his train was running at a speed not exceeding ten or twelve miles per hour, and assigns as a reason therefor that it was customary to slack up at the point where the accident occurred. He says his train was running on the time given by a time card prepared and promulgated by the defendant. This time card was put in evidence, and it calls for a rate of speed exceeding that specified in the ordinance. The ordinance is in these words: 'Sec. 1238. It shall not be lawful within the limits of the city of St. Louis for any car, cars or locomotives propelled by steam power, to run at a rate of speed exceeding six miles an hour; but nothing in this section shall be so construed as to apply to any car, cars or locomotives running over track or tracks which are maintained along the river bank between Arsenal street and Elwood street.'

"The case was submitted to the jury on this evidence produced by the plaintiff; and the first complaint is that the court erred in overruling the defendant's demurrer to the evidence. In this connection the defendant seeks to have the above ordinance ruled out of the case for these alleged reasons: *First*, because the right of the city of St. Louis to regulate the speed of railroad trains is implied from the express power conferred upon it to regulate the use of the streets; hence, the ordinance should be construed as applying to streets and crossings only; *second*, because the ordi-

nance was not designed for the protection of the defendant's employees, and the plaintiff can derive no benefit or protection therefrom.''

Upon a new trial plaintiff again recovered a judgment, from which defendant appealed. The evidence in behalf of plaintiff on the last trial was about the same as on the first. As to the additional facts which occurred upon the last trial, they are as follow:

On this trial it was shown that the curve of the lead track to the south was very slight, only two degrees. A civil engineer testified, from a careful measurement and test, that one standing where Bluedorn said he was struck would have had an open, straight view of the train approaching from the west, for three hundred and fifty feet. Plaintiff himself admitted that he had an open view of the track for forty or fifty yards, but the shadows of the bridge from the electric lights interfered with his vision. Defendant's evidence showed that "the yards where plaintiff was employed extended from the Union Depot, at Twelfth street, westwardly to Grand avenue, and were covered by a multitude of tracks intersecting each other, in constant use by switching engines engaged in handling a large terminal business, as well as by some sixty or seventy incoming and outgoing trains. Ten to fifteen switch engines with a full complement of attendants, consisting of engineer, fireman, foreman, and helps or switchmen, were constantly engaged in doing the switching service in these yards; that is, gathering up and distributing out cars throughout the different parts of the yards.'' The testimony of plaintiff was contradicted by witnesses of defendant as to where his train was when he commenced work that night, as to his position on the train, as to the signals given, and as to his necessity to go across the track in order to give the signals to the engineer. Plaintiff admitted having

knowledge of the dangers continually surrounding him, and that it was his business to look out for this train, as well as all others, and keep out of its way. The case was submitted to the jury upon all the evidence and instructions.

Defendant complains of the action of the court in giving plaintiff's instructions, in refusing some and modifying others asked by it, and in refusing to admit certain evidence. On the question of contributory negligence, the court gave the jury, at request of defendant, the following instructions:

"If you believe from the evidence in this case that the track over and across and on which plaintiff was engaged in his work for the defendant was in frequent use by switching engines, and likely at any time to be occupied and used, it became and was the plaintiff's duty to keep a reasonably diligent outlook to avoid them; and if you believe from the evidence that, by the exercise of such reasonable outlook, he would have seen the train by which he was struck before stepping upon the track, in time to have avoided taking the step, and kept out of its way, then you are instructed that he can not recover in this case, because of his contributory negligence.

"If you believe from the evidence that the plaintiff knew of the schedule time of the train by which he was struck, and knew that it was on time at the place where he was struck, and that he stepped on the track immediately in front of it, without heeding its approach or looking out for its approach, then you are instructed that he was guilty of such contributory negligence that he can not recover in this case, although the train was running at a rate of speed in excess of six miles per hour."

And the court gave, with modifications in italics, the following instructions asked by defendant: "The

jury is instructed that one of the duties imposed upon or undertaken by the plaintiff in his employment by the defendant was to keep a *reasonable* lookout for trains, engines, and cars moving in or through the yards, and avoid them; and if you believe from the evidence that *he failed to keep such lookout, and* stepped upon the track where he was hurt within ten or fifteen feet of the engine approaching him, and that by keeping *such* lookout therefor he would, before stepping upon the track have seen the engine so approaching in time to have kept out of its way, then *he was guilty of such negligence as prevents his* recovering,—that you must find your verdict for the defendant. Or if the jury believe, *from all evidence,* the plaintiff saw the engine approaching, or by keeping an ordinary, careful lookout would have seen it, and attempted to cross in front of it, when it was close upon him, then *he was guilty of negligence that prevents his recovery, and you should find for the defendant.*

"If the plaintiff was injured by or through any fault, omission, or neglect of those in charge of the train, *other than that of running it at a greater rate of speed than six miles per hour,* he can not recover in this case, and your verdict must be for the defendant."

I.   Defendant now insists that upon the pleadings and evidence a verdict should have been by the trial court directed for the defendant because of the contributory negligence of plaintiff. This is insisted upon because plaintiff in his evidence admitted that it was his duty to keep out of the way of the train that caused the injury as well as all others; that it was plain to be seen at least one hundred and twenty feet away, and that he stepped upon the track when it was immediately upon him. It is urged that if plaintiff saw the train he was negligent in going in front of it, and he assumed all risk of injury in doing so, and if he did not see it

the fact was the result of his negligence in not looking, as his duties required. When testifying as a witness he was asked the following questions to which he made answer as follows:

"*Q.* Did you step immediately in front of the engine? *A.* Well, I don't know; I hardly know to say that I stepped immediately in front.

"*Q.* What do you say about it? *A.* I just caught a glimpse of the headlight, and don't know how far the train was from me when I stepped on the track; I had my eyes in another direction from the approaching of that train, because I was looking right towards the rear end of my train when the train was coming from the west."

Plaintiff's duties as switchman required, of course, his attention to the business in which he was engaged, and it can not be said as a matter of law when all the circumstances connected with the accident, the time and place where it occurred, the business in which plaintiff was engaged, the excessive rate of speed at which the train was running at the time, that he was not entitled to recover. Upon this theory of the case there was ample evidence to justify its submission to a jury. Plaintiff must have necessarily been watching, as he stated he was, the engineer of the train for which he was switchman, in order to give him the proper signals, and unless he saw the train that struck him, and stepped immediately in front of it, or from his own negligence did not see it, and its excessive rate of speed was the direct cause of the injury, then he was entitled to recover. The evidence tended to prove that the engine was moving at the rate of twenty miles per hour, while the maximum rate allowed by city ordinance was six. And it can not be said, as a matter of law, that plaintiff was negligent in keeping his eyes and his attention upon the business of his employer for

a few seconds and in stepping on the track in front of the train, when if it had been running at a lawful rate of speed, upon which he had a right to rely unless he knew to the contrary, he would not have been guilty of any negligence. *Sullivan v. Railroad*, 117 Mo. 214. As the evidence does not make out a clear case of contributory negligence, the case was one for the consideration of the jury. *Bluedorn v. Railroad*, 108 Mo. 439.

II. Plaintiff's first instruction is assailed by defendant. By it the jury is told that "if they believe from the evidence that plaintiff's injuries, if any, were caused by said train being run by said defendant in pursuance of the time table given in evidence, and at a rate of speed in excess of that permitted by said city ordinance, then any injuries shown by the evidence to have been sustained by plaintiff by being struck by said train will, in the absence of other evidence, be presumed to have been caused by defendant's neglect in thus failing to comply with said ordinance, that is, in running said train at a greater rate of speed than six miles an hour, in violation of said ordinance; and the burden of proving that plaintiff, by his negligence, contributed to such injuries, is upon the defendant."

The contention is that the presumption of injury from the excessive rate of speed was one of fact, merely, and that the court was not warranted in declaring it to the jury as one of law. The circumstances may tend to show that but for the excessive rate of speed of the train which caused the injury it would not have occurred, yet, no legal presumption of that kind arose solely from the fact that it was at the time running in violation of the city ordinance. It is only in case that the presumption necessarily flows from and is a sequence of the act which produces the effect that it can be indulged. There was no legal presumption to be indulged in this case. It was a matter of proof, a fact to be passed upon

by the jury under the evidence, but which right was taken away from it under the instruction as given. The accident might have happened anyway, although the train had been running within the time prescribed by ordinance; hence, it was misleading to tell the jury that the injury might be presumed to have been occasioned by the unlawful rate of speed of the train which caused it.

Suppose the train had been moving at the rate of six and one-half miles per hour, would the same rule apply? It is not the increased rate of speed after it passes the six mile per hour limit that makes it unlawful, but the rate of speed in excess of that fixed by ordinance, so that it is just as unlawful, though not as dangerous, to run at six and one-half miles per hour as it is twenty or thirty, and from it the same presumption, if any, must be indulged. We do not say that from the facts as disclosed by the evidence the jury may not have fairly inferred that the injury was caused by the excessive rate of speed but that such was the legal presumption and that the court correctly so stated to them in this instruction, we think is incorrect. It was peculiarly their province to determine whether or not under the evidence the injury was caused by the excessive rate of speed at which the train was moving at the time, without being directed that such was the presumption. All that was necessary for plaintiff to prove under this instruction, in order to entitle him to recover, was that his injury was caused by a train of cars which was at the time running at a rate of speed exceeding six miles per hour; everything else was to be presumed. Unless there was evidence to connect with the accident the violation of the ordinance as a direct cause, it was no ground for recovery, and this important fact could not be supplied by presumption. All the authorities agree that a recovery can not be had upon

mere proof of injury and defendant's breach of a statute or ordinance. The plaintiff must prove that the breach of regulation was the proximate cause of his injury. 1 Shearman and Redfield on Negligence, sec. 27; *Kelley v. Railroad*, 75 Mo. 138.

In *Ham v. Barret*, 28 Mo. 388, it is said: "There are presumptions of law and presumptions of fact. The former are of a nature to exclude all contrary proof, and which the court will not suffer the jury to disregard; whilst the latter are founded in experience, and may be raised or not as the jury may determine, and for a disregard of which the court grants or refuses a new trial as upon the evidence in all other cases of trial by jury. Where a presumption is one of fact merely, the court is not warranted in declaring it to the jury as a presumption authoritatively raised by law, but should direct them that from the evidence it is their province to determine whether they will raise the presumption or not. The jury, looking to the bench for the law, would naturally take it that such a declaration was binding and left them no discretion. Where the facts are before the jury, the presumptions or inferences they warrant are questions purely for them."

The effect of the instruction was to invade the province of the jury; and being told by the court that, if plaintiff's injuries were sustained by being struck by a train which was at the time running at a rate of speed in excess of that permitted by the city ordinance, in the absence of other evidence, will be presumed to have been caused by defendant's neglect in failing to comply with the ordinance, was but little less than directing them to find a verdict for plaintiff. That the injuries were caused by the train and that at the time thereof it was running at a prohibited rate of speed is perfectly clear, but it does not necessarily follow that

it might not have happened even if the train had been moving at less than six miles per hour.

This is a close case of contributory negligence and while, as it was said in the first opinion, "the evidence does not make out a clear case of contributory negligence" the jury should have been left free to find such a verdict as the evidence required "without casting into the balance" a presumption in favor of the plaintiff and against the defendant. *Moberly v. Railroad*, 98 Mo. 183.

III. The instructions upon contributory negligence, aside from what has been said in regard to the first instruction given for plaintiff, were very fair to both parties, and covered every phase of the case presented by the evidence. Those of defendants which were refused were substantially embraced in those given.

IV. Another contention is that the court committed error in excluding evidence offered by defendant tending to prove that its business in its yards could not be done if it was required to conform to a maximum speed of six miles per hour. This ordinance was held valid on a former appeal. See, also, *Fath v. Railroad*, 105 Mo. 540. Plaintiff's cause of action is bottomed upon the violation, by defendant, of the ordinance of the city, while the answer is a general denial, and a plea of contributory negligence. The validity of the ordinance is not questioned by the pleadings, and the evidence offered for the purpose of showing it to be unreasonable, was entirely foreign to any issue involved. "The facts from which the law draws the conclusion of non-liability must be pleaded in the answer when they are not stated in the petition." *Musser v. Adler*, 86 Mo. 449; Bliss on Code Pleading, sec. 352. The only thing that was put in issue by the answer with respect of the ordinance was that the train which

caused the injury was at the time being run at an unlawful rate of speed, and this only by way of general denial.    Under this state of the pleadings, no evidence was permissible for the purpose of showing the unreasonableness or invalidity of the ordinance.

In cases where no pleadings are required, as in *Corrigan v. Gage*, 68 Mo. 541, and *St. Louis v. Weber*, 44 Mo. 547, a different rule prevails—and in such cases, evidence is permissible under the general issue for the purpose of showing the invalidity or unreasonableness of city or town ordinances, for whose violation actions are being prosecuted.

V.    A final contention is that the court committed error in permitting the jury to take to their room while considering their verdict the pleadings in the case. While the propriety of sending the pleadings in a case on trial before a jury to their room, or permitting them to be so taken by the jury, may well be doubted; it is and has been for years the practice in many of the circuits in this state, and in the absence of some improper use of them, or some prejudicial results, the case should not be reversed upon that ground.    Such matters are largely in the discretion of the trial court, and we are not prepared to say that it was unreasonably exercised in this case.

For the error in giving plaintiff's first instruction, the judgment should be reversed and cause remanded to be tried in accordance with the views herein expressed.    It is so ordered.    All concur, except SHERWOOD, J., who does not concur in the first paragraph of the opinion, and is of the opinion that the judgment should be reversed without remanding the cause.