CHARLES MATTSON v. MINNESOTA & NORTH WISCONSIN RAILROAD COMPANY.[1]

June 15, 1906.

Nos. 14,726—(99).

**Best Evidence.**

The rule which requires a party to produce the best evidence which is available and accessible is not rigid and inflexible. It may, under proper circumstances, be relaxed by the trial court.

**Use of Pleadings by Jury.**

The trial court may, in its discretion, permit the jury to take the pleadings to the jury room. But the practice is of doubtful propriety, and the

[1]Reported in 108 N. W. 517.

pleadings should not be given to the jury unless in the particular instance there is some special reason for so doing.

**Contributory Negligence.**

In an action by a parent to recover for the loss of the services of a minor child, the negligence of the parent which contributed to the injury will bar a recovery.

**Care of Child.**

The parent or guardian of a child is required to exercise that degree of care for the safety of the child which a reasonably prudent and cautious person ordinarily exercises under the same or similar conditions and circumstances. In determining in a particular case whether such care was exercised the jury are entitled to take into consideration the place of the accident, the character of the community, the intelligence of the people, and the means and opportunities at command in connection with the other circumstances.

Action in the district court for Carlton county by plaintiff as administrator of the estate of Willie Mattson, deceased, plaintiff's minor son, to recover $5,000 for the death of decedent. The case was tried before Cant, J., and a jury, which rendered a verdict in favor of plaintiff for $2,519. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Davis & Hollister,* for appellant.

*John Jenswold, Jr.,* for respondent.

ELLIOTT, J.

In an action by a father to recover damages for the loss of the services of his minor child, killed by the alleged negligence of the defendant, the jury returned a verdict for the plaintiff. From an order denying a motion for judgment notwithstanding the verdict, or for a new trial, the defendant appeals to this court.

1. In Mattson v. Minn. & N. Wis. R. Co., 95 Minn. 477, 104 N. W. 443, 70 L. R. A. 503, the plaintiff's son, Hjalmar, recovered damages for injuries received at the same time and by reason of the same explosion which caused the death of the child for the loss of whose services the present action is brought. That action was tried before the present one, and the transcript of the evidence in the first case was, by consent of the parties, read to the jury in this case. There is some

additional evidence in the present case and so far as it is important, it tends to strengthen the case of the plaintiff. The defendant offered no evidence. The facts upon which we held that the defendant was negligent are fully stated in the former opinion and it is not necessary to restate them. The evidence clearly shows that the defendant was negligent in the particulars stated in the complaint.

2. The defendant makes thirteen assignments of error. All but the fourth and thirteenth relate to questions which were raised and determined adversely to it in the former case, and need not be reconsidered.

The fourth assignment questions the correctness of the ruling of the court upon the introduction of certain evidence. For the purpose of showing that certain sticks of dynamite which were found in plaintiff's barn were of the kind and quality which had been used by the railway company in the immediate vicinity of the plaintiff's home and not such as were commonly used by the farmers in clearing their land, the witness was asked, "Now what was the number marked on that dynamite?" It appeared that figures showing the percentage of dynamite in the sticks appeared upon the wrappers, and the defendant claims that the papers should have been produced or accounted for. If the papers had been available and accessible they would have been the best evidence. But some reasonable discretion must be allowed the trial court in the application of the so-called best evidence rule. It does not appear that the wrappers could have been removed, and it is fair to assume that all parties interested were willing to waive the production of the dynamite in court. The rule is not inflexible and must be applied by the trial court with due regard to all the circumstances. The best evidence must be produced when feasible.

3. The practice of allowing the jury to take the pleadings with them to the jury room is of very doubtful propriety. But it was approved in the early case of Brazil v. Moran, 8 Minn. 205 (236), 83 Am. Dec. 772, and seems to prevail very generally in some of the districts of the state. It is the duty of the court to state the issue to the jury and it is error to refer the jury to the pleadings for the information. Swanson v. Allen, 108 Iowa, 419, 79 N. W. 132. Properly the jury have nothing to do with the pleadings, and argument directed to them should be addressed to the court. They are often drawn in technical

language which may be easily misunderstood by a juror. In some instances they contain allegations with reference to matter which has been withdrawn or excluded. Occasionally in certain kinds of actions, pleadings contain denunciatory matter and a profusion of adjectives which might improperly influence jurors. The statute which expressly names the papers which the jury may take to the jury room does not mention the pleadings. R. L. 1905, § 4175.

On principle they should be excluded, but we can conceive of instances when it would be convenient and desirable for the jury to have the pleadings in the jury room while considering the evidence. Unless such special reasons exist, the terms of the statute should be strictly followed. The matter can safely be left to the wise discretion of the trial court subject to review when that discretion is abused and prejudice to the objecting party results. Powley v. Swensen, 146 Cal. 471, 80 Pac. 722; Toledo Traction Co. v. Cameron, 137 Fed. 48, 69 C. C. A. 28; International v. Leak, 64 Tex. 654; 4 Current Law, 1717, note; Bluedorn v. Missouri, 121 Mo. 258, 25 S. W. 943. There was no abuse of discretion in this instance.

4. In the former case to which reference has been made the question of the contributory negligence of the father was not determined although it was assumed for the purposes of the argument on the question of imputed negligence. But this action is brought by the father for his own benefit, and he cannot recover if his negligence contributed to the injury to his son. Westerberg v. Kinzua, 142 Pa. St. 471, 21 Atl. 878, 24 Am. St. 510; Bamberger v. Citizens, 95 Tenn. 18, 31 S. W. 163, 28 L. R. A. 486, 49 Am. St. 909. The question of contributory negligence was properly submitted to the jury.

It was the duty of the father of this child to use the care and means for its protection which persons of ordinary prudence and caution would consider necessary and proper under the conditions and circumstances. While the rule is the same for all, the particular case must be judged by the present conditions and circumstances. The locality, the character of the community, the intelligence of the people and the means available under the conditions are all elements which enter into the problem. The acts of people who live on the frontier, and are engaged in the arduous and exacting labor of creating homes in the wilderness, must be judged in the light of the conditions under

which they live. The father must work in the field and the mother must attend to the household duties. The little ones must be allowed the freedom of the neighborhood or be deprived of the air and sunshine which is necessary for their health and happiness. To impose upon the parents the duty of employing servants, or being themselves always with the children, would in such a community be to deny to them the protection of the law, and justify the negligent killing of their children with impunity. The law imposes no such impracticable standard.

This accident happened on a farm in a new country. The parents of the child were Finlanders who were engaged in farming and with only the facilities ordinarily possessed by people under such circumstances for the care of their children. The defendant's contention amounts to saying that after it had made the locality dangerous by negligently scattering dynamite about, the parents must keep the little folks within doors or provide them with an attendant at the peril of negligently subjecting them to danger. It does not lie in the mouth of the original wrongdoer to successfully contend for such a doctrine. We think the jury was justified in finding that the father had used that degree of care for the protection of the child which the law under the conditions and circumstances imposed upon him.

The boy, Willie, had been born on the farm and was not quite seven years old when he was killed. He was a bright lad and had been accustomed to play in the vicinity of his home naturally and properly like other children. There were five other children, three younger than Willie. The eldest was about eight years of age. Early in May the boys found some black powder, and the father gave the eight year old boy, Hjalmar, a "good lickin'," and told them that

> If they found any powder or anything that belonged to the railroad company they should stay away.

He also told the railway company's foreman to take the powder away. Blasting in the nearby railway cut had ceased, and the plaintiff thought that the danger was passed. He knew nothing of other explosives being used or found until the day before the accident. Nor did he know that the boys had been over to the cut in the curve until a

"little before they got hurt and this accident happened." The foreman then told him to keep the boys away because,

"They would want to take a ride on these dump cars and they might get hurt on them." He says that he kept them away as much as possible.

When I saw them about there on the track, I always told them not to go there—to keep away from there. I told them in the house not to go there, they might get hurt. [He] did not know of any powder being there or dynamite.

The day before the accident he found the boys with a stick of dynamite. He then took it away from them, and again whipped Hjalmar in the presence of Willie, and told the boys that they must not touch the dynamite;

To keep away from the railroad, that dynamite was bad stuff and liable to kill them if it was struck or burned or anything; to let that stuff alone and keep away from it.

The accident occurred during haying time, and the plaintiff was necessarily busy with his work and unable to have the boys with him all the time. On the day in question the plaintiff had gone to the neighboring town, and when the explosion occurred the mother was in the stable milking the cows. Under these circumstances it was for the jury to say whether the plaintiff exercised that degree of care for the safety of his child which a person of ordinary care and prudence would exercise under the conditions and circumstances. Hedin v. Suburban, 26 Ore. 155, 37 Pac. 540; O'Flaherty v. Union, 45 Mo. 70, 100 Am. Dec. 343; Kay v. Pennsylvania, 65 Pa. St. 277, 3 Am. Rep. 628; Pittsburg v. Pearson, 72 Pa. St. 169; Philadelphia v. Long, 75 Pa. St. 257; Beach, Cont. Neg. (3d Ed.) § 142; Shearman & Redfield, Neg. § 72.

Order affirmed.