## EXILDA DECKER v. ITASCA PAPER COMPANY.[1]

July 15, 1910.

Nos. 16,649—(166).

**Doctrine of turntable cases applied.**

In an action for the death of plaintiff's intestate, a boy between five and six years of age, it is *held* that the pleadings and evidence bring the case

[1]Reported in 127 N. W. 183.

---

[Note] Doctrine of "attractive nuisances," see note to Cahill v. E. B. & A. L. Stone & Co. (Cal.) 19 L. R. A. (N. S.) 1094.

within the doctrine of the turntable cases, and that the evidence is sufficient to sustain the verdict, both as respects defendant's negligence and the contributory negligence of the child's parents.

**Contributory negligence of infant under seven.**

Whether a child under the age of seven years, and under express law incapable of committing a crime, may be chargeable with contributory negligence, quære?

**Same — charge to jury.**

But on the evidence presented in this case it is *held* that the trial court properly instructed the jury that the decedent was not guilty of such negligence.

Action in the district court for Itasca county by the administratrix of the estate of Francis Paul Decker, deceased, to recover $5,000 for the wrongful death of her minor intestate.

The complaint, in addition to the allegations concerning the death of the intestate by being accidentally struck by a counterweight attached to defendant's elevator and falling off from the elevator, the direct result of which was that he was then and there killed, contained the following allegations: "Said premises and the contents thereof were within the notice and knowledge of the defendant at all times attractive to, and did by reason of the aforesaid condition thereof continuously attract and draw, children of all ages and in large numbers thereto and therein, and while there playing in and about said machinery and elevator, said children were then and there at all times, without objection or hindrance of the defendant but with its knowledge and consent, and upon its invitation and in wilful disregard of the safety of their persons and lives, thereby exposed to great and imminent danger, of all of which facts defendant had at all times full notice and knowledge; but notwithstanding this it negligently, carelessly and unlawfully left free and open access into said mills and to the aforesaid elevator and the elevator shaft through which it worked, which it left open and unguarded and exposed and attractive and accessible to children, and with no one in charge thereof, but in such condition that said elevator could at all times be used and be moved up and down by such children, that during all of said period defendant carelessly, negligently and

unlawfully maintained the said elevator and elevator shaft in a dangerous and unsafe condition and without any fence, guards or other barriers about the same, and without any regular operative thereof to keep such children from going into and operating the same or from falling into said elevator shaft, by reason whereof it was a nuisance and source of great danger to such children; that during all of said period children of all ages customarily resorted to and frequented said mills and were thereby exposed to danger from the aforesaid machinery, elevator and elevator shaft; but notwithstanding this defendant carelessly and negligently omitted to keep the outside doors of said mills closed, in like manner failed to close up the outside openings thereto, but permitted the same to then and there at all times remain open and accessible to and to be used as a passageway and resort by said children, and in manner as aforesaid failed to keep such children away from there."

The answer alleged that the elevator was equipped in the usual and ordinary manner, and was in all respects safe and proper for use.

The case was tried before McClenahan, J., and a jury which returned a verdict in favor of plaintiff for $1,547. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Spear & Stone,* for appellant.

*John Jenswold, Jr.,* for respondent.

BROWN, J.

Action to recover for the death of plaintiff's intestate, caused, as alleged in the complaint, by the negligence of defendant. The short facts are as follows:

Defendant is a corporation engaged in operating a paper and pulp mill at Grand Rapids, in this state. The mill is supplied and equipped with all necessary machinery and utensils, and is operated by both water and steam power. The water power is created and supplied by a dam across the Mississippi river at the point where the mill is located, and the dam is so constructed that the surface thereof is made use of by persons crossing the river whenever they

have occasion to do so. This passageway led into the mill; but it was not necessary, in crossing the river over the dam, to pass through the buildings, though both young and old did so frequently. The evidence shows that the mill premises, including the buildings, were much frequented by persons not engaged therein as employees of defendant. In one of the main rooms of the mill, in size about seventy feet square, is located an elevator, used to carry both persons and freight to and from the basement of the building to the floors above. The elevator consists of a flat surface six feet square, without sides or other protection, and is operated by means of counterweights, to which are attached the necessary pulleys and ropes to guide the same. It is easily operated, and the children in the neighborhood, those crossing the river, and others, were frequently upon the premises, in the building, and playing about the elevator when not in use by defendant's employees, and this with the knowledge and acquiescence of defendant's agents and servants. On Sunday, March 22, 1908, plaintiff's son, a boy five years and three months old, in company with a brother a year and a half or so older, and another boy about the same age, went to defendant's premises for the purpose of play and amusement. They entered the mill and proceeded to operate the elevator, which they could easily do by pulling upon the rope by means of which it was set in motion. As the elevator was ascending, under the manipulation of one of the boys, the counterweight, which passed close to the elevator, struck decedent, so plaintiff claims, throwing him from the elevator to the basement, and killing him. Plaintiff had a verdict, and defendant appealed from an order denying an alternative motion for judgment notwithstanding the verdict or for a new trial.

The pleadings and evidence bring the case within the doctrine of the turntable cases, and the only questions presented on this appeal are (1) whether the evidence sustains the verdict, and (2) whether the court erred in its instructions to the jury.

1. It is contended that there was not sufficient evidence to establish beyond mere surmise or conjecture the manner in which decedent came to his death, and it is urged that for the failure of the

evidence in this respect a reversal should follow. In this we do not concur.

The precise manner in which the accident happened is not of controlling importance; for it is clear that decedent, and his companions, were at defendant's mill, and were playing about and operating the elevator, precisely as other boys of tender years had been permitted by the agents of defendant to do for some time, and that decedent was killed while so engaged. He either fell off the elevator platform, which was wholly unprotected around the sides, or was struck by the descending counterweight as the elevator proceeded upward, and knocked off to the basement below. The elevator, in the condition in which defendant maintained it, was extremely dangerous as a playground for young children, and the precise manner in which the accident happened is not of serious moment as respects defendant's liability, since it is clear that death resulted from playing about the elevator. However, we discover in the record evidence reasonably tending to support the theory of plaintiff that the boy was struck by the descending counterweight, and in that manner met his death. Defendant offered evidence tending to show that small boys were forbidden the premises, and, when found, that they were driven away, and it is claimed that defendant performed its full duty in keeping them away. This evidence, in connection with that offered by plaintiff upon the same subject, presented a question for the jury.

2. It is next contended that the boy's parents were guilty of contributory negligence as a matter of law, and that plaintiff cannot recover. We do not concur in this view of the case. The question was one of fact, and the trial court properly submitted it to the jury.

While the evidence is clear that the children generally resorted to the mill for the purpose of pastime, we find no evidence sufficient to dispose of the case, as a matter of law, that plaintiff, or her husband, knew that their boys mingled with the other children at the mill. In fact, they both testified that they did not know they had ever been playing at the mill before. About four o'clock on the afternoon of the accident plaintiff gave her two boys some money,

and they proceeded "uptown" to spend it. They there met another boy, and he induced them to go with him to the mill. Plaintiff's intestate was killed at about six o'clock, and had been absent from home a little less than two hours. Had the boys been accustomed to resort to the mill for play to the knowledge of the parents, then a claim of contributory negligence would come with some force; but the evidence does not show such condition to have existed. Nor does it show that the parents had any reason to believe, or suppose, that the boys would go to the mill, and it cannot, therefore, be said as a matter of law that they contributed to the death of decedent by permitting him to remain out of their sight during the time stated, two hours, on the fatal afternoon. Mattson v. Minnesota & North Wisconsin R. Co., 98 Minn. 296, 108 N. W. 517; Gunderson v. N. W. Ele. Co., 47 Minn. 161, 49 N. W. 694; Mattes v. Great Northern Ry. Co., 95 Minn. 386, 104 N. W. 234.

3. The contention that the court erred in its instructions to the jury presents the only serious question in the case. Defendant requested the court to submit to the jury the question whether decedent was guilty of contributory negligence in going upon the mill premises for the purpose of playing. The court refused the request, and charged the jury as a matter of law that on the evidence presented the boy was not chargeable with contributory negligence.

Decedent was a little past five years old, a bright boy, and shown to have possessed the intelligence usually found in children of that age. The question whether a child under the age of seven years, and therefore, under express law, incapable of committing a crime, may be held guilty of contributory negligence, has been presented to the courts of the several states with varying results. The conclusions reached are conflicting. In some jurisdictions the question is tested by the mental capacity of the child and the character of the danger confronting him, while in others the rule of the criminal law is applied. In the latter jurisdictions it is maintained that if a child is, by reason of his age, deemed incapable of crime, for the same reason he should be held incapable of forming opinions or appreciating risks and dangers with which he may come in contact.

The question is not free from doubt. There is force and merit

to both sides of the question.  A child of six or seven years of age might be shown to have possessed the necessary intelligence to comprehend, or to have received warnings and instructions concerning a particular danger, and be chargeable with contributory negligence when injured from such danger.  On the other hand, a child of the same age, but of less intelligence, and without warnings, might well be held, as a matter of law, free from fault and incapable of apprehending the dangers before him. .And again, if incapable of forming the intent essential to the commission of a crime, it is a little difficult to perceive the reason for charging him with intelligence enough to comprehend the dangers of personal injury.

The precise question has never been directly passed upon by this court, and we find no reason for deciding it in the case at bar. Here decedent was five years old, and was not shown to have possessed any more intelligence, or to have been in any essential degree brighter, than ordinary children of his age.  The dangers incident to playing about the elevator were not so obvious to one of his years as to charge him with notice of the same, and we affirm the view of the trial court that on the facts here presented the question of his contributory negligence was one of law, and the jury was properly instructed upon the subject.

This covers all questions requiring special mention.

Order affirmed.