FREDA W. MAHAN v. ARCHIE McCOOL AND OTHERS.[1]

December 24, 1931.

No. 28,696.

[1]Reported in 239 N. W. 914.

*Grimes & Toensing,* for appellant.
*Ernest E. Watson,* for George Moser, respondent.

OLSEN, J.

The jury in this case returned a verdict in plaintiff's favor and against the defendants other than George Moser, in effect finding no cause of action as to him. Plaintiff appeals from an order denying her motion for a new trial as to defendant Moser.

Two questions are raised by the appeal: (1) Whether the verdict finding no cause of action against defendant Moser is sustained by the evidence; (2) whether the court erred in its charge in relation to said defendant.

The decedent, John T. Mahan, was riding as a passenger in a touring car owned and driven by defendant Moser. Moser was driving west on Lowry avenue in Minneapolis. When he came within some 23 feet of the east line of the intersection of Lowry avenue with Newton avenue, he drove up to the curb on the north side of Lowry avenue, his right hand side, and there stopped to let one Johnson out of the car. He intended to turn to the left at this corner and go south on Newton avenue. After Johnson had stepped out Moser started into the street intersection, gave a proper signal of his intention to make a left turn, and proceeded, according to his testimony, in the proper course to make such turn. When he had properly made the turn and had about reached the south line of Lowry avenue a truck driven by Archie McCool, one of the defendants, approached from the west on Lowry avenue at a high

rate of speed, some 35 miles an hour. The driver of the truck attempted to turn south on Newton avenue to avoid a collision. Going at that speed his truck skidded into the Moser car and fatally injured Mahan. Defendant Moser, in making the turn, was going at a rate of speed not over eight miles an hour. When entering the intersection and starting to make the turn, he saw a vehicle coming toward the intersection from the west on Lowry avenue, but then about a block away, which turned out to be the truck driven by McCool. Moser then looked to his right and left to watch for traffic on Newton avenue and continued making his turn. When he next observed the truck it was some 15 feet away and skidded into his car.

Moser did not give any signal of his intention to turn before he drove up to the curb and stopped. When he started from where he had stopped at the curb to make the turn, he was then in a position where he could not immediately proceed into the intersection along the line of travel next to the center line of Lowry avenue. He did proceed out toward the center line of Lowry avenue and toward the center of the intersection and gave the signal for a left turn while so doing. The facts as we have stated them, while not all undisputed, are such as the jury could reasonably find. It is not disputed and is conclusively shown that Moser was first in the intersection and had the right of way therein under 1 Mason, 1927, § 2720-18(b).

We are required to view the evidence in the light most favorable to defendant Moser, and, so considered, the evidence well sustains the verdict.

It is suggested that a bus and a car passed Moser's car while it was standing and may have obstructed McCool's view of Moser's car and of his signal. But here again we must accept the evidence most favorable to Moser, and that is that this bus and car were over half a block away when he started from where he had stopped. Other claims are made as to the route traveled by Moser's car, as to how he passed the center of the intersection, as to the distance he could give the signal, and other matters. These claims are based

largely on disputed evidence, and we find nothing therein to call for special consideration. The question of Moser's negligence was a question of fact for the jury and was settled by the verdict.

■ Errors are assigned upon the charge of the court. The court gave to the jury the statutory road rules contained in 1 Mason, 1927, §§ 2720-16(a), 2720-17, and 2720-18(b).   . °

Section 2720-16(a) provides that one intending to turn to the right at an intersection "shall approach such intersection in the lane for traffic nearest to the right hand side of the highway, and in turning shall keep as closely as practicable to the right hand curb or edge of the highway. When intending to turn to the left he shall approach such intersection in the line for traffic to the right and nearest to the center line of the highway and in turning shall keep as near to the center of the intersection as practicable."

Section 2720-17 provides that a driver, in starting, stopping, or turning from a direct line of travel, whenever the operation of any other vehicle may be affected by such movement, shall give a signal by extending the arm or by some mechanical or electrical device, plainly visible to the driver of such other vehicle, of the intention to make such movement at least 50 feet before a stop or turn is made.

In connection with these statutory rules the court charged in part as follows:

"In this case the testimony shows that the car stopped to let off a passenger within 50 feet of the intersection. The law therefore could not be complied with as far as the 50 feet is concerned but would require that the signal be given from the time that the car started up."

The court further said:

"There are two different things. The statute provides that he should keep as near to the center of the street before making the turn, and in making the turn keep as near as practicable to the center of the intersection. * * *

"As far as keeping to the center of Lowry avenue before making the turn, the jury will take into consideration the fact that the car had stopped over on the right-hand side and that it might not have been feasible for the car to get to the center of Lowry avenue to comply with the first part of the statute before making the turn because he was already so near. But the jury will take the statute into consideration and also the facts as to where Moser was, how he did make the turn, and decide whether or not the statute was violated. * * *

"Then, as I said before, in construing that statute as to where he should drive, you should consider the situation he was in—he was parked there, and whether or not it was feasible for him to get out to the center line of the street before he got to the intersection, that is a matter of common sense."

The court thus left it to the jury to say whether defendant Moser had violated these statutory road rules under the circumstances shown, and charged the jury that if they found he had violated the statute, and further found that such violation was a proximate cause of the collision, then they should hold him liable. The court also submitted to the jury the question whether Moser was guilty of common law negligence, of failure to exercise ordinary care, and, if so, whether his negligence in that respect was a proximate cause of the collision.

The plaintiff contends that the evidence conclusively shows violations of the statute as a matter of law and that the court erred in submitting the question to the jury. Various arguments are made in this connection. It is suggested that, as Moser had stopped so near the intersection that he could not then approach same in the line of traffic nearest the center line of the street and could not then give a signal of his intention to turn 50 feet before he reached the intersection, therefore he had no right to turn at all, but should have proceeded straight ahead until he reached some other cross-street.

The statute is in general terms and applies to intersections on country highways as well as on city streets. In the country such

a rule might require the traveler to go miles out of his way before reaching a suitable intersecting road, and in many places in cities several blocks might intervene before an available cross-street was reached. Any turning at other than an intersection is at best a hazardous step. The statute, neither in terms nor by necessary construction, prohibits one in Moser's situation from making a left-hand turn at the intersection near which he is standing.

Edblad v. Brower, 178 Minn. 465, 227 N. W. 493, and two other cases are relied upon. In the Edblad case the car was stopped or parked on the wrong side of the road in the nighttime, and a car properly driven on that side of the road collided with it. There the wrong consisted in the car's being stopped at a place where it had no right to stop. In our present case Moser's car was never on the wrong side of the street. It was stopped for a legitimate purpose at a place where it had a lawful right to stop, and no accident happened while it was there standing. Another case is that of a truck parked on a paved highway at night without lights. The statute prohibited parking on the pavement and required lights on vehicles operated on highways. The other case was one where the driver failed to give any signal of an intention to make what was held equivalent to a turning to the left. These cases do not appear to have any application to the facts before us.

It is contended that there was here no emergency, hence the statute must be strictly applied. Granting that there was no emergency, there was a situation not covered by the terms of the statute. The statute as to giving a signal 50 feet before starting to make a turn and approaching the intersection in the line of traffic to the right and nearest to the center of the street has in view moving vehicles. In Budish v. Villaume B. & L. Co. 181 Minn. 259, 232 N. W. 264, the statute requiring that cars be driven on the right side of the street was held not to apply to a car which was not traveling but had stopped and was backing into a parking space. So in our present case the statute as to signal at the 50-foot point and as to driving in the lane of traffic next to the center line of the street should not be held applicable to a car standing at the

curb. The statute is not unyielding and should not be given an unreasonable construction. In State v. Bussian, 111 Minn. 488, 490, 127 N. W. 495, 496, 31 L.R.A.(N.S.) 682, the driver violated the statute requiring slow-moving vehicles to drive next to the curb. The court said: "All the record shows is that it was more convenient for defendant to violate the law than to obey it." We have no such record here.

While it is the law that one who violates a statute is liable for any injury or damage resulting directly from such violation, there are, as indicated in the terms of the law, two necessary factors. First, there must be a violation of a statute; second, such violation must be the proximate cause of the injury or damage. Generally these two questions are questions of fact for the jury. The evidence in a particular case may be conclusive on one or both questions. We do not hold it was conclusive on either question in the present case.

The charge of the court, as applied to the facts in the case, conforms to what we have here said. There was no erroneous charge on any controlling or fundamental proposition of law. There were no exceptions to the charge at the trial; hence we need not determine whether there were any verbal or inadvertent inaccuracies therein.

Order affirmed.