### JOHN JENSON v. N. P. GLEMAKER.[1]

December 6, 1935.

Nos. 30,547, 30,548.

[1]Reported in 263 N. W. 624.

*Sweet, Johnson & Sands,* for appellant.

*A. H. Clemens,* for respondent.

JULIUS J. OLSON, JUSTICE.

Two negligence actions were tried together below and are similarly submitted here. In the first cause plaintiff sought to recover damages for injuries personal to himself; in the second as representative of the estate of his wife, who was killed in the accident. A recovery was had in both cases; in the first the verdict was in the sum of $3,500, and in the second $1,500. Upon defendant's blended motion in each case for judgment notwithstanding or a new trial, the court reduced the first verdict to $2,800, and the second to $1,200, but in other respects denied the motion. Plaintiff in each case consented to the reduction. Defendant appeals.

The evidence justified the jury in finding the following facts: Plaintiff and wife were engaged in farming and were residing upon their farm located some four miles south of Rochester. On the morning of September 4, 1934, they drove there for the purpose of making needed purchases. Having finished therewith at about ten o'clock, they proceeded homeward upon highway No. 52, which crosses their farm something like 80 rods from their residence. Connecting their residence with the highway is a private road. The only point in which we are interested is the approach from the highway to the private road. An engineer called in plaintiff's behalf testified that the width of the driveway at that point was approximately 33 feet. The private road lies to the east of the trunk highway. On the west side of it was plaintiff's mailbox located some distance to the north, estimated by the witnesses at from 12 to 30 feet. An engineer's plat introduced in evidence, drawn to scale, indicates that the post was approximately 18 feet north of the northerly curve line of the private crossing leading to plaintiff's farm. As plaintiff and wife were proceeding homeward they stopped at the mailbox. Plaintiff's car was stopped partly upon the pave-

ment and partly upon the shoulder of the road, thereby enabling Mrs. Jenson to reach out from her side of the car for the mail. The motor was allowed to run. Only a momentary stop was made. Plaintiff thereupon proceeded to cross to his driveway. Just as he was about to do so a car came by. He claims that he looked in both directions and saw no other cars, hence proceeded slowly, the car being in low gear. Just as the front wheels of his car struck the gravel on the easterly side of the pavement it was struck by defendant's car with such force and violence as to carry both cars along the easterly edge of the pavement a distance of approximately 32 feet. There is testimony on the part of one Mr. Kipp that he measured the distance of the skid marks made by defendant's car from the time the brakes were applied until they were released after both cars had stopped at 49 feet 6 inches. The skid marks of defendant's car indicated that his car had skidded 17½ feet before striking the plaintiff's car. At any rate, defendant's car was "whisked" beyond the driveway something more than 25 feet. The car was badly smashed. Plaintiff's wife was instantly killed and plaintiff rendered unconscious.

The highway is of concrete 20 feet in width with earth and gravel shoulders approximately 10 feet wide on each side. The road is level over a considerable distance both north and south of the place of accident. From the north, whence defendant came, there is an open view of 100 rods, 1,650 feet, after rounding a curve. That is the only direction we need consider.

Defendant testified that when he was about half way between this curve in the road and the mailbox (something over 800 feet) he observed that plaintiff's car had stopped; that he then saw the car proceed in the same direction as he was traveling; that plaintiff seemed to be going slowly; that when defendant was about 300 feet away he sounded his horn but did not at that time slacken speed. Plaintiff proceeded to cross but gave no statutory or other signal indicating his intention so to do except as indicated by his routing of the car in that direction. Defendant thought he could pass plaintiff's car by going to the left of the highway but that plaintiff suddenly started very fast toward his driveway and as a

consequence the accident occurred. At any rate, it is obvious that if defendant had not swung to his left and over on the wrong side of the road no harm could have come to anyone. Defendant testified that his speed when he sounded the horn was approximately 50 miles per hour. That means he was traveling at a rate of about 75 feet per second. Plaintiff testified that when he was crossing he did so in low gear and moved slowly. A witness for defendant who was with him in the car testified that as they were making the turn in the bend of the road he observed the car at the mailbox. So it is obvious that there is not complete agreement between that witness's testimony and that of defendant. Be that as it may, it would seem that a fact question was presented both in respect of defendant's negligence and plaintiff's contributory negligence.

1. It is conceded, of course, that if plaintiff's negligence contributed to the happening of the accident he cannot recover in his own case, nor can he as administrator of his wife's estate, as he is the sole beneficiary, the wife having died without issue. Mattson v. M. & N. W. R. Co. 98 Minn. 296, 108 N. W. 517; Decker v. Itasca Paper Co. 111 Minn. 439, 127 N. W. 183; Anderson v. Anderson, 188 Minn. 602, 248 N. W. 35.

2. At the time of oral argument counsel for defendant conceded that the evidence was such as to make a jury question of defendant's negligence. But it was strenuously urged, and to that the greater part of his brief is devoted, that plaintiff was guilty of contributory negligence as a matter of law. The automobile accident cases upon which defendants in such actions rely have been cited. There is no need of discussing them. They have been so often referred to and so thoroughly dissected and discussed that nothing further can be said respecting them. After all, no two cases are exactly alike. Each must depend upon its own peculiar facts.

The court instructed the jury on this phase in this language:

"When one is required to look for approaching cars upon a highway he is required to perform that duty attentively. In other words, the duty is not performed by merely glancing in an absent-minded manner or carelessly. One must see what is before his eyes

to be seen. If, therefore, plaintiff looked and did not see defendant's car when it was right before his eyes to be seen, then he was negligent. If, however, the car was so far away that persons of ordinary prudence would not have taken note of it, then, of course, he was not negligent. The test in all cases is what persons of ordinary prudence usually do under the same or similar circumstances. Now, if the plaintiff was negligent in failing to see defendant's car and that negligence contributed to the happening of the accident, there can be no recovery in either action."

We hold without further discussion that a fact question was presented and that the jury was justified in finding, as it did, that plaintiff was not guilty of contributory negligence. We cannot as a matter of law say that the jury was wrong.

The trial judge in his memorandum said:

"Plaintiff would not necessarily be negligent in failing to see defendant's car at such a distance. As was said in Sorenson v. Sanderson, 176 Minn. 299, 300, 223 N. W. 145, 146: 'A driver frequently and quite naturally observes the absence of approaching vehicles within a reasonable distance rather than tries to see what he may discover in the harmless distance.' * * * That * * * [is what] in this case is shown by the fact that the plaintiff had entirely cleared the west half of the road and that there would have been no accident had the defendant remained upon that side."

We think the trial court was right. It is not our business to interfere.

Some considerable part of defendant's brief is devoted to plaintiff's failure to give any signal of his intention to cross the highway. The statute provides that where one turns to his left he must extend his arm or give some other signal indicating his intention so to do at least 50 feet before making the turn. 1 Mason Minn. St. 1927, § 2720-17. In the instant case, the mailbox being only 18 feet north of plaintiff's driveway, it is obvious that he could not give the statutory warning. If defendant had been traveling at a reasonable rate of speed, having observed, as he did, that this man had stopped to get his mail, that immediately in front of him and to his

left was this private driveway, there being no other driveway in that vicinity, it seems rather clear that defendant should have, in the exercise of reasonable care, so slackened his speed as to avoid the happening of this disastrous accident. The physical facts establish that he was more intent on speed than on safety. According to his own version, he was 300 feet away when plaintiff started from his mailbox. He claims to have sounded his horn at this point but did not slacken speed until later. Plaintiff had but 10 feet to cross to the side of the pavement where he should be safe from assault of traffic coming from behind.

We should not reverse in cases of this nature where defendant's negligence is obvious and where it is equally clear that reasonably prudent men would be likely to do just what plaintiff did here. If defendant's claims were to be sustained we would be rewarding the careless driver because of his very recklessness and thereby refuse to compensate him who has been found by the trier of fact to have acted with reasonable prudence. After all, the burden rested upon defendant to prove that plaintiff's negligent conduct contributed as a cause to the accident and that without such the accident would not have happened. 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 7012, and cases cited. We think that upon defendant rested the duty of anticipating the natural movements of plaintiff when the latter was on his way to his own driveway from his mailbox. The whole picture was before defendant. He had but to use ordinary care to see and to grasp just what plaintiff was about to do.

Other errors assigned have been examined and found wanting in merit.

Orders affirmed.

LORING, JUSTICE (dissenting).

As I view the facts in this record they conclusively show that the plaintiff was guilty of negligence contributing proximately to his injury. It is just as conclusive that the defendant was negligent and unskillful in his driving. It must be conceded that Jenson gave no signal of his intention to cross the concrete highway. He does not claim that he did. He does claim that he looked back

toward Rochester before making the turn and allowed one car from that direction to pass him before going or attempting to go across the pavement. At that time the defendant's car was in full view, as can be demonstrated to a mathematical certainty. Plaintiff did not see it. Hence he did not look. Defendant's car was not coming at an unusual speed but at the usual rate at which most cars travel on such main through highways as this. Under 1 Mason Minn. St. 1927, § 2720-17, plaintiff, before turning from a direct line was bound to see that the movement could be made in safety. To a mathematical certainty he did not do so. Before making such turn he was also bound to give a signal if the operation of any other vehicle might be affected by his turn. It is true that the statute requires the signal to be given at least 50 feet before the turn is made, but it would be an absurd construction of the statute to say that because it was not practicable to give the signal at that distance before the turn the driver would be absolved from giving any signal or other notice of intention. In the case of Mahan v. McCool, 185 Minn. 94, 239 N. W. 914, 915, this court approved the trial court's charge as follows:

" 'In this case the testimony shows that the car stopped to let off a passenger within 50 feet of the intersection. The law therefore could not be complied with as far as the 50 feet is concerned but would require that the signal be given from the time that the car started up.' "

The Jenson car had been largely off the pavement in order to get Mrs. Jenson close enough to the mailbox so that she could remove the mail therefrom without alighting from the car. Jenson was thus out upon the shoulder, and a normal movement of his car to his own right side of the highway would have required him to turn somewhat to the left. Therefore the mere turning of his car in that direction, until he had reached the center line of the highway at least, would be no warning of his intent to cross the other lane of traffic or enter the left side of the road. His driveway to his farm, the buildings of which were not in sight, evidently came in at an angle and was 12 to 30 feet beyond the mail post. He therefore

crossed, not at right angles, but diagonally. It is quite obvious that after the first car passed him he assumed that the road was clear, without looking for the defendant's car, because if he had looked he must have seen it there. In the entire absence of any statute requiring a signal, I think ordinary prudence would, as a matter of law, have required him either to wait for the passage of defendant's car or to give a signal of his intent to cross so that the defendant might diminish his speed sufficiently so that he might avoid collision. Nó argument is necessary to show that the failure to signal and the failure to see if the movement could be made in safety contributed proximately to the collision.

STONE, JUSTICE, took no part in consideration of this case.

