## BALTIMORE & OHIO SOUTHWESTERN RAILROAD COMPANY v. HUNSUCKER.

[No. 4,455.   Filed April 7, 1904.]

MASTER AND SERVANT. — *Personal Injuries.* — *Knowledge of Danger.* — A complaint against a railroad company for injuries received by plaintiff while assisting in clearing away a wreck, based upon the failure of defendant to furnish a reasonably safe place for plaintiff to work, is bad, where the pleading discloses that the dangers were open and obvious, though the complaint alleges that the plaintiff had no notice or knowledge of the dangers complained of. *pp. 31–36.*

SAME.—*Personal Injuries.—Employers' Liability Act.—Complaint.—* A complaint against a railroad company for injuries received by plaintiff while assisting in clearing away a wreck, alleging that defendant's superintendent of wreckage, with full power to control defendant's servants, including plaintiff, ordered and directed plaintiff, with others, to take hold of a car bolster and load the same, well knowing it was too heavy to be handled with reasonable safety, and negligently failed to warn plaintiff of the danger, states a cause of action under subdivision two of §7083 Burns 1901. *pp. 36, 37.*

APPEAL AND ERROR.—*Overruling Demurrer to Bad Paragraph of Complaint.* —*Reversal of Judgment.*—Where one paragraph of a complaint for personal injuries was good, and one was bad, a judgment in favor of plaintiff will be reversed because of the action of the court in overruling a

demurrer to the bad paragraph, it not being affirmatively shown from the record upon which paragraph of complaint the verdict and judgment rest *pp. 37, 38.*

From Jackson Circuit Court; *T. B. Buskirk,* Judge.

Action by William Hunsucker against the Baltimore & Ohio Southwestern Railroad Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Edward Barton, O. H. Montgomery, H. D. McMullen, H. R. McMullen* and *C. W. McMullen,* for appellant.

*T. J. Burton, F. M. Vance* and *McHenry Owen,* for appellee.

WILEY, P. J.—Action by appellee to recover damages for personal injuries inflicted by the alleged negligence of appellant. Complaint in two paragraphs, to which a demurrer was overruled. Answer in two paragraphs, to the second of which a demurrer was overruled. Reply in denial, trial by jury, general verdict for appellee, and answers to interrogatories. Appellant's motion for judgment on the answers to interrogatories and for a new trial overruled. Appellant also moved to reject and dismiss appellee's complaint on the ground that he refused to submit to an examination as a witness prior to the trial, which motion was also overruled.

All rulings adverse to appellant are assigned as errors. Appellee has assigned as cross-error the overruling of his demurrer to the second paragraph of answer.

The first paragraph of complaint avers that appellee was in the employ of appellant as a section man; that he was forty years of age, in good health, and was of great physical strength; that on the 19th of June, 1901, while so employed, there was a wreck of freight-cars on appellant's road, by which some cars were derailed and broken into fragments; that it was necessary, to clear away said wreckage, to place the derailed cars back on the track, and, in clearing away said wreckage, it became necessary to hoist and load and haul parts of the broken cars away; that it

became necessary for the superintendent of wreckage to take charge of the work, and it was the duty of the section men to obey his orders and directions, and said superintendent ordered and directed the section men, including appellee, to assist in the work; that the superintendent of wreckage had the necessary appliances, derrick, tools, and implements to clear away the wreckage, and had the same in process of operation, and, in addition thereto, had cars, engines, and trains for the purpose of carrying the wreckage away; that it was a part of appellee's duty to assist in clearing away said wreckage; that in performing said work there was used for loading the heavy parts a derrick, until near its completion, when it became necessary to load a heavy piece known as a "car bolster" which weighed about 1,500 pounds; that in loading the same, the superintendent of wreckage ordered and directed the section men, including appellee, to take hold of the same with their hands and load it into one of the "dump or side-dump" cars, which had a high siding; that in attempting to load it several of the employes, including appellee, took hold of it, which was irregular in shape, had bolts, boltheads, or plates projecting on the sides or edges, which prevented it from slipping on the top of the car, and when they had placed one end on the top of the end of said dump-car there was a bolt or bolthead or plate projecting from the underside, which made it necessary to lift the said car bolster so it would pass said point and slip over the end into the car, but in attempting to do so the bolster was too heavy for the number of men who could get hold of it to handle it, and appellee, being at the end of the bolster, with his hands and right shoulder under and attempting to support it, and standing on the ground, and being lower than the top of the dump-car, and those engaged in trying to load it in the car being unable to hold it by reason of its weight, it slipped back against appellee's shoulder, and, being unable to extricate himself and escape, he had to hold the same,

whereby he was injured. (Here follows the particulars of the injuries appellee sustained.)

This paragraph of complaint then charges appellant with these specific acts of negligence, to wit: That the said car bolster was too large and heavy and ill shaped to be loaded on a car by the personal and manual efforts of the section men, and should have been hoisted and loaded by the derrick which was there and in use, and could have been supplied by the exercise of reasonable care; that to attempt so to load the same into a car with the sides and ends thereof eight to ten feet high was dangerous to life and limb, and was known to be so by appellant, and that appellant also knew that the proper and safe way to load the said car bolster was by the use of the derrick; that appellee had no knowledge of the great weight of the car bolster, nor of the danger or unsafety of attempting to hoist and load it in the manner attempted; that he had no knowledge or notice that there were upon the sides and edges of the car bolster any bolts, boltheads, or plates projecting therefrom, and did not know it was dangerous to attempt to load it until the same had been placed upon the top of the end of the car, at which time it became impossible for him to extricate himself from danger without almost certain death to himself and great injury to his fellow laborers. It is then averred that "his said injuries were incurred wholly by reason of the carelessness, negligence, and failure to furnish him with a reasonably safe and suitable place to work."

In the second paragraph of complaint appellee seeks to fix the liability upon the appellant, under subdivision two of §7083 Burns 1901, commonly known and designated as the employers' liability act. It is averred that one Hodapp was appellant's superintendent of wreckage, to whom was delegated authority to manage and control the work of clearing away wreckage on the lines of its road; that said Hodapp had full power and authority to manage and con-

trol the work of clearing away the wreckage of broken cars and debris, and had full power to control and manage the servants and laborers of appellant, including appellee; that said Hodapp had authority to give orders and directions, which appellee and other employes were bound to obey and conform to; that appellee did so obey and conform to said orders and directions, and was at the time of his injuries performing his duties in conformity and obedience to said orders. It is further alleged that appellee's injuries were caused wholly by reason of the negligence and carelessness of said Hodapp; that said superintendent should have used the derrick, which appellant had provided, to hoist and load the car bolster; that it was too heavy to be loaded by hand, and to attempt to load the same by hand was dangerous and unsafe; but Hodapp, disregarding his duty to appellee to provide him a reasonably safe and suitable place in which to work, ordered and directed appellee, with other employes, to take hold of said car bolster and load the same, well knowing it was too heavy to be handled with reasonable safety, and negligently failed to warn appellee of the danger; that said Hodapp, by giving said order and direction, made the place of work dangerous and unsafe, and that appellee did not know of such danger. It is also further alleged that appellee, at the time of, and prior to his said injury, had no knowledge of the great weight of said car bolster, nor of the danger and unsafety of so attempting to hoist and load the same into the car by hand, and that he was in the exercise of due care and diligence for his own safety, and was free from any fault or negligence on his part. It will be observed that in this paragraph of complaint, no charge of negligence is made on the ground that bolts, boltheads, and plates were projecting from the car bolster.

It is shown by the first paragraph of complaint that it was a part of appellee's duties as a section man to assist in clearing up wreckage within his territory. The first para-

graph is a common law count for injuries sustained while appellee was in the line of his duty, and that his injuries resulted from appellant's negligence. The acts of negligence charged are both acts of omission and commission, in that it was negligence to omit to use the derrick in loading the car bolster, and that it was also negligence to attempt to load it by manual strength, as detailed. The direct cause of appellee's injury, as shown by this paragraph, was a projecting bolt on the car bolster, which kept it from slipping over the end of the car into which it was being loaded, and by reason of its great weight caused it to slip back on appellee's shoulder. The first paragraph avers that appellee had no knowledge or notice that there were upon the edges or sides of the car bolster any bolts, boltheads, or plates' projecting therefrom, and did not know that it was dangerous or unsafe to assist in the attempt to load said car bolster until the same had been placed on the end of the car.

There is wanting in the complaint any averment that appellee could not have known, by the exercise of reasonable care, that there were projecting bolts, boltheads, or plates on the car bolster, before he began to move it, or that he could not have known, by the exercise of reasonable care, that it was dangerous to undertake to move it in the manner described.

True, the first paragraph alleges that appellee's injuries were the result of the carelessness, negligence, and failure of duty of defendant, and its failure to furnish him a reasonably safe and suitable place to work, yet it seems clear from the general and specific allegations that the sufficiency of this paragraph can not be upheld upon the theory that appellant did not furnish appellee a reasonably safe place to work. It is shown that a part of appellee's duties was to assist in clearing away wrecks. A place where a wreck on a railroad has occurred, with the wreckage present, may or may not be a place of danger. It is

Baltimore, etc., R. Co. v. Hunsucker.

evident that such a place is as open and obvious to the employe as it is to the employer. If the place is dangerous, the danger is apparent to all who have an opportunity of observing it. The surroundings, conditions, and situation are subjects of observation to all alike. The purpose of clearing away and removing the wreckage is to make the place safe, and it would seem that under such conditions the doctrine that it is the duty of the master to use reasonable care in making the working place of his servant reasonably safe would not apply. The complaint shows further that appellant did furnish suitable machinery and appliances with which to do the particular work in which appellee was engaged, for it did furnish a derrick, and the complaint avers that it was the proper appliance with which to load the car bolster.

It is shown by this paragraph that the direct cause of appellee's injuries was the great weight of the car bolster, and a bolt in it which kept it from slipping into the car when placed on the top of the siding. The car bolster is not specifically described, but it is averred to be "a heavy piece of a car," which weighed about 1,500 pounds. An object of that weight must be of considerable size. Appellee was a man of mature years, and had the same opportunity of observing the shape, size, and general character of the car bolster as appellant's superintendent of wreckage had. It is not averred that its dangers were latent. The bolts, boltheads, and plates that projected from it were as open and obvious to his view as to the master's. When he, with other employes, first took hold of it to place it in the car he must have discovered its great weight. He knew as well as the master did the height it had to be lifted, for the car into which it was to be placed was on the track and was visible to all. He says in his complaint that the top of the car was from eight to ten feet high. Notwithstanding the averment of want of knowledge on his part of the danger

incident to loading the car bolster, and the projecting bolts, etc., yet we are confronted with the physical fact, from which there is no escape, that these things were open and obvious to one using ordinary care. He knew also that the derrick was not being used in this particular work.

A complaint of this character, to be good against a demurrer for want of facts, the obligation rests upon the plaintiff to disclose an absence of knowledge on his part of the defects or dangers of which he complains. It is firmly established by the decisions that the general allegation of the absence of knowledge will be overcome by allegations from which it is evident that the servant must have known of the defects or dangers, or had the same means or opportunity for such knowledge as the master had. *Louisville, etc., R. Co.* v. *Kemper,* 147 Ind. 561; *Peerless Stone Co.* v. *Wray,* 143 Ind. 574; *Sheets* v. *Chicago, etc., R. Co.,* 139 Ind. 682; *Ames* v. *Lake Shore, etc., R. Co.,* 135 Ind. 363.

In *Louisville, etc., R. Co.* v. *Kemper, supra,* it was said: "Where the alleged defects are of such a character as that their perils are open and obvious it would seem but a contradiction of terms to say, in the absence of peculiar circumstances denying an opportunity for observation, that while so open and obvious they were unknown. Where they are open and obvious to the servant, as the facts specially alleged disclose, the general allegation of the want of knowledge is overcome by such special allegations."

The case of *Citizens St. R. Co.* v. *Brown,* 29 Ind. App. 185, is in point. There appellee, who was in appellant's service as a servant, was called upon to assist in moving a heavy iron "frog," and averred that while so engaged he was "pulled over" and injured; that the work was dangerous, that appellant knew of such danger, and that appellee was ignorant thereof. There was no averment in the complaint that the danger was latent, and it was held that if it was a dangerous undertaking, the danger was as obvious to appellee as it was to appellant. The complaint there

failed to aver that the dangers to which appellee was exposed were not apparently such that they could have been avoided by the use of ordinary care, and the complaint was held bad.

In *Wortman* v. *Minich,* 28 Ind. App. 31, it was held that the servant assumed those risks which were open and obvious, or which he could have discovered by the exercise of ordinary care, and the fact that he did not know of the defects which caused his injury could avail him nothing, where he had equal opportunity with the master, and could, by ordinary observation have seen them. See, also, *Stuart* v. *New Albany Mfg. Co.,* 15 Ind. App. 184.

In *Peerless Stone Co.* v. *Wray, supra,* appellee was injured by the giving away of a bank of dirt, clay, and stone as he was passing near it. It was alleged in his complaint that he had no knowledge that said "dirt, clay, and stone had been loosened and left without any support;" that appellant knew there was danger of its falling, and that there was danger in passing near it. There was no allegation that appellee did not know of the danger. It was held by the Supreme Court that it was apparent from the allegations that appellee had at least an equal opportunity with appellant to have known that the embankment mentioned was unsupported, that it was open to his observation, and that if he had exercised ordinary care he would have known such fact. The court said: "The rule is that obvious defects or dangers, open to the ordinary, careful observation, or such as are or should be known by the exercise of ordinary care, are assumed by the employe. * * * The paragraph may therefore be considered the same as if the averment that appellee had no knowledge that the embankment was unsupported were eliminated, but whether so considered or not, it is clear that the averment of want of knowledge on the part of appellee was not sufficient."

In *Griffin* v. *Ohio, etc., R. Co.,* 124 Ind. 326, it was held that where the danger is alike open to the observation of

both the master and servant, they are upon an equality, and that the master is not liable for an injury incident to the business. The following cases are also in point: *Day* v. *Cleveland, etc., R. Co.,* 137 Ind. 206; *Vincennes Water, etc., Co.* v. *White,* 124 Ind. 376; *Indiana, etc., R. Co.* v. *Dailey,* 110 Ind. 75.

In the case we are considering, appellee was a man of mature years and judgment, and in such case the law does not cast upon the master the duty of becoming eyes and ears for his servant, where there is nothing to prevent the latter from using his own eyes and ears to avoid danger. The relations that necessarily exist between master and servant are largely reciprocal, and the law imposes upon each of them the duty of using care, diligence, and caution. Men must use the senses with which they are endowed, and where one fails to do so, he alone must suffer the consequences, and he is not excused where he fails to discover danger, if he made no attempt to employ the faculties that he possessed. *Day* v. *Cleveland, etc., R. Co., supra; Brazil Block Coal Co.* v. *Hoodlet,* 129 Ind. 327; *Lake Shore, etc., R. Co.* v. *Pinchin,* 112 Ind. 592; *Stewart* v. *Pennsylvania Co.,* 130 Ind. 242; *Pennsylvania Co.* v. *Meyers,* 136 Ind. 242. For the infirmities in the first paragraph of complaint to which we have referred, the demurrer should have been sustained.

As above stated, by the second paragraph appellee seeks to fasten liability upon appellant under the provisions of the employers' liability act of 1893 (Acts 1893, p. 294, §7083 Burns 1901). Section 1 of that act provides "that every railroad * * * shall be liable for damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases: * * * Second. Where such injury resulted from the negligence of any person in the service of such corporation, to whose

order or direction the injured employe at the time of the injury was bound to conform, and did conform."

Under the averments of the second paragraph of the complaint, the general doctrine of fellow servants or of assumed risks is not controlling. The statute is clear and explicit, and is its own interpretation. It simply provides that where an injury results to any person in the service of a corporation embraced therein, from the negligence of any person in the service of such corporation, to whose order or direction the injured employe, at the time of the injury, was bound to conform, and did conform, the master shall respond in damages, provided the injured party was in the exercise of due care and diligence. This embraces the doctrine of vice-principal, by which the person in authority, to whose orders the employe is bound to conform and does conform, represents and acts for the corporation.

To contradistinguish the difference between the doctrine of the co-servants' rule, and that applicable under this statute, the Supreme Court has applied this threefold test: (1) Was the offending servant clothed by the employer with authority to give orders to the injured servant that the latter was bound to obey? (2) Did the injury result to the latter from the negligence of the former, while conforming to an order of the former, that the injured servant was, at the time, bound to obey? (3) Was the injured party at the time of the injury in the exercise of due care and diligence? *Louisville, etc., R. Co. v. Wagner,* 153 Ind. 420; *Thacker v. Chicago, etc., R. Co.,* 159 Ind. 82, 59 L. R. A. 792; *Indianapolis Gas Co. v. Shumack,* 23 Ind. App. 87. Measured by the rule declared in these cases, the second paragraph of complaint states a cause of action under subdivision two of section one of the act of March 4, 1893. The demurrer to it was properly overruled.

It does not, however, affirmatively appear from the record upon which paragraph of complaint the verdict and

judgment rest. In such case a judgment for the plaintiff below will be reversed because of the action of the court in overruling a demurrer to a bad paragraph of complaint. *Cincinnati, etc., R. Co.* v. *Voght,* 26 Ind. App. 665.

Judgment reversed, and the court below is directed to sustain the demurrer to the first paragraph of complaint.