## Cleveland, Cincinnati, Chicago and St. Louis Railway Company *v.* Powers.

[No. 21,319. Filed July 2, 1909. Rehearing denied October 29, 1909.]

1. PLEADING.— *Complaint.— Master and Servant.— Railroads.— Yards.—Danger.—Negativing Knowledge of.*—A complaint by a servant to recover for injuries received while passing through a switch yard must negative knowledge of danger which he in- curred and from which he received his injuries; and the allegation of want of knowledge must be as broad as the allegation of defendant railroad company's knowledge thereof.  p. 112.

Cleveland, etc., R. Co. *v.* Powers—173 Ind. 105.

2. PLEADING.— *Complaint.*— *Master and Servant.*— *Negativing Knowledge of Defects and Omissions.*—*Specified Facts.*—A complaint by a servant for injuries received by reason of defects or omissions must negative knowledge thereof; and if the specific facts alleged show a knowledge thereof, or the same opportunity therefor as the master, they will overcome the general allegation of want of such knowledge. p. 112.

3. PLEADING.— *Complaint.*— *Master and Servant.*— *Railroads.*— *Switch Yard.*— *Dangers.*— *Negativing Knowledge Thereof.*— A complaint alleging that the plaintiff was in the employ of defendant railroad company, that he crossed the switch yard in going to and returning from his work, that for several days he and others had assembled there, that before daylight he attempted to cross a track and hearing a train approaching he stepped backwards upon another track ordinarily not used, where he was struck by another train, running out of schedule time, shows that the plaintiff had equal knowledge with the master, and is therefore bad. p. 113.

4. MASTER AND SERVANT.—*Defective Ways and Works.*—*Promise to Repair.*—A master is not liable to a servant for injuries caused by defects known to the servant, unless a promise has been made to repair, or some other excuse justifying the servant in remaining in the service. p. 113.

5. MUNICIPAL CORPORATIONS.— *Ordinances.*— *Binding Force.*— A valid municipal ordinance has the same force as a legislative act. p. 113.

6. PLEADING.—*Complaint.*—*Master and Servant.*—*Violation of Statute.*—*Assumption of Risk.*—*Knowledge of Violation.*—A complaint by a servant for injuries caused by his master's violation of a statute, or ordinance, need not negative the servant's knowledge of such violation, nor allege facts showing that the servant did not assume the risk. pp. 114, 116.

7. RAILROADS.—*Negligence.*—*Violation of Municipal Ordinances.*— *Master and Servant.*—The running of a railroad train in violation of a city ordinance constitutes negligence *per se;* and such company's servants have a right to rely upon the assumption that such ordinances will be obeyed. p. 115.

8. PLEADING.— *Complaint.*— *Master and Servant.*— *Safe Place.*— *Railroad Yard.*—A complaint alleging that the plaintiff was compelled to cross defendant railroad company's switch yard in order to reach his work, and that while crossing the tracks therein he was injured by a passing train, is not based upon the theory of an unsafe working place. p. 116.

9. RAILROADS.—*Master and Servant.*—*Switch Yards.*—*Invitation.*— A servant of a railroad company who, with the knowledge and consent of such company, crosses its switch yard on his way to

work, is upon the company's premises by invitation, and is not a trespasser, and such company owes him the duty of reasonable care to avoid injury. pp. 116, 118.

10. MASTER AND SERVANT.—*Assumption of Risk.—Railroads.—Violating City Ordinance.*—A servant who was crossing his railroad company's switch yard, taking his only available course, knowing such yard to be dangerous, and who was injured by one of the company's trains which was being run in violation of a city ordinance, cannot be held, as a matter of law, to be guilty of contributory negligence, or to have assumed the risk. p. 116.

11. PLEADING.—*Complaint.—Master and Servant.—Negativing Contributory Negligence.*—It is not necessary in a complaint for personal injuries to negative contributory negligence. p. 117.

12. PLEADING.— *Complaint.— Negligence.— Proximate Cause.*— A complaint for personal injuries must show that the negligence complained of was the proximate cause of the injury. p. 117.

13. MASTER AND SERVANT.—*Reliance Upon Train Schedules or Ordinary Use of Tracks.—Railroads.*—A servant of a railroad company has no right to rely upon the train schedule, or upon the custom of using certain tracks for certain trains. p. 117.

14. NEGLIGENCE.—*Proximate Cause.—What is.—Question for Jury.*—The proximate cause of an injury is the decisive cause thereof, and what constitutes such cause is usually a question for the jury. p. 118.

15. PLEADING.— *Complaint.— Railroads.— Ordinances.—Proximate Cause.*—A complaint alleging that the plaintiff servant was standing at night upon a railroad track in defendant railroad company's switch yard, that a train was run in violation of the city ordinance, thereby injuring the plaintiff, shows that such violation was the proximate cause of the injury. p. 119.

16. RAILROADS.—*Violating Ordinances.—Contributory Negligence.—Question for Jury.*—Whether a servant standing, at night, upon an ordinarily unused track, and who was struck by a train running out of schedule time and in violation of a city ordinance, was guilty of contributory negligence, is a question for the jury. p. 120.

17. MASTER AND SERVANT.—*Violation of Rules.—Proximate Cause.*—The violation of a rule of the master does not preclude a recovery by the injured servant, unless such violation was the proximate cause of the injury. p. 120.

18. PLEADING.— *Complaint.— Negligence.— Contributory.— Conjectures.*—A complaint by a servant for injuries received because of his master's violation of a speed ordinance is not bad because it fails to negative conjectures as to what plaintiff might have done to avoid defendant's negligence. p. 120.

19. APPEAL.—*Assignments of Errors.—Sufficiency.*—Assignments of errors alleging that "there is manifest error in the proceedings and judgment in this cause in this," setting out the causes, is sufficient. p. 120.

20. APPEAL.—*Bills of Exceptions.—Authentication.*—Where the record shows that on July 30, appellant filed its bill of exceptions in the circuit court—such record being followed by a bill purporting to be signed by the trial judge on July 29—such bill is properly a part of the record. p. 121.

21. APPEAL.—*Bills of Exceptions.—Evidence.—Alleged Omissions of.*—A bill of exceptions certified as containing all the evidence is not shown to have omissions thereof, where questions were asked, objections interposed and overruled, and no answers to the questions given, or where questions were not finished, or where the reporter could not discern any answer. p. 121.

22. APPEAL.—*Bills of Exceptions.—Evidence.—Maps.*—Where testimony in the bill of exceptions referred to a map designated as exhibit 1, and also to a diagram, the diagram being of a plat of appellant's railroad yard, a map introduced in evidence as exhibit 2, containing a plat of such yard, the evidence indicating it to be the same as exhibit 1, will be considered as being identical with exhibit 1, and with such diagram. p. 122.

23. APPEAL.—*Instructions.—How Brought into Record.—Trial.*— Instructions may be brought into the record, (1) by a bill of exceptions, (2) by exceptions taken orally and entered upon the record or minutes of the court, and (3) by written, dated, and signed exceptions at the close of the instructions requested and refused, or those given by the court over objection. p. 122.

24. TRIAL.— *Instructions.— Signing.—Numbering.—Statutes.*—The provisions of §561 Burns 1908, Acts 1907, p. 652, requiring judges to sign and number instructions, where they are requested in writing, are mandatory. p. 123.

25. TRIAL.—*Instructions.—Negligence.—Several Acts of.—Proof of One.—Railroads.*—An instruction, in an action for personal injuries against a railroad company, that if the evidence establishes one of the alleged acts of negligence causing the injury, the verdict should be for the plaintiff, is erroneous, where but one of the alleged acts constituted a cause of action, although the answers to the interrogatories show that the act constituting the cause of action was established. pp. 123, 124, 125, 128, 130.

26. APPEAL.— *Instructions.— Erroneous.—Curing.*—A bad instruction can be cured only by withdrawing same. p. 124.

27. TRIAL.—*Burden of Proof.—Contributory Negligence.*—The burden of proving contributory negligence, in personal injury cases, is upon the defendant, but all the evidence on that question in the case should be considered. p. 128.

28. TRIAL.—*Interrogatories.—Motions for Judgment on.—Contributory Negligence.*—A motion for a judgment on the answers to the interrogatories, on the ground that the plaintiff was guilty of contributory negligence, should be overruled, where the court cannot say that the answers show such negligence. p. 130.

From Decatur Circuit Court; *Marshall Hacker,* Judge.

Action by George Powers against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment on a verdict for plaintiff for $6,500, defendant appeals. *Reversed.*

*Thomas L. Stitt, Carey E. Cowgill, Leonard J. Hackney* and *Frank L. Littleton,* for appellant.

*J. K. Ewing* and *Frank Hamilton,* for appellee.

MYERS, J.—This action was instituted by appellee against appellant for damages for personal injuries alleged to have been inflicted by appellant on appellee.

The complaint is in one paragraph. The material allegations are that defendant, at the city of Greensburg, has a large yard, containing about sixty acres of ground, covered with main tracks, side-tracks, switches and spurs, amounting in all to seven miles of track, over which tracks all incoming and outgoing trains pass and repass; that such yards were in charge of a yardmaster, and that repair shops and a roundhouse are situated in said yard; that defendant maintained in said yard a network of interlocking switches, manipulated by hand and by electricity, and that the switching of cars, and the transferring of trains from Louisville, Cincinnati, Indianapolis, St. Louis, Chicago and intermediate points, as well as the passage of through trains through said yard, rendered it extremely dangerous and extra hazardous for pedestrians or workmen to enter said yard, or upon the tracks therein, all of which was well known to said defendant; that plaintiff, a laborer in the employ of defendant, was working under the immediate command of a foreman in charge of about twenty men, all of whom were subject to his directions and command; that for several days prior

to February 19 the plaintiff and said crew were ordered by said foreman to report for duty at the office, situated in said yard, not later than 6 o'clock a. m. each day; that on February 19, 1907, at the hour of 6 o'clock a. m., deep darkness and a dense fog hung over the earth; that plaintiff at such hour, in strict obedience to the command of defendant, made by its said foreman, proceeded to said office, in compliance with such order, which order plaintiff was bound to obey; that there was no way to reach such office without passing over such tracks through such yard; that defendant on said date, and for a long time prior thereto, permitted its said employes to pass and repass over said tracks in said yard, in going to and returning from said office, and that such use was with the knowledge and consent of defendant; that there was at that time in force, in the territory covered by such yard, an ordinance of the city of Greensburg limiting the speed of trains to twelve miles an hour; that at the same time a regular schedule for the arrival and departure of trains was in full force, showing the time for the departure of train No. 31 south bound for Louisville, Kentucky; that plaintiff was familiar with the time of the departure of train No. 31, and knew that said train usually left Greensburg for the south via the south main track; that on the morning of February 19, 1907, between the hours of 5 o'clock a. m. and 6 o'clock a. m., this plaintiff, while using all possible care to avoid danger, caused by the darkness and dense fog which hung over such yard, and while carefully proceeding to obey the orders of his foreman, to whose orders he was bound to conform, and while trying to avoid an east-bound train then approaching, stepped from said south main track and onto the north main track, where no train was scheduled to run at any time within one hour, and where he did not expect, and had no reason to expect, any train to run; that he was immediately struck and injured, as hereinafter stated, before he had time to look or listen for train No. 31; that defendant carelessly, negligently, reck-

lessly, unlawfully, in violation of said ordinance, and in total disregard of the rights of plaintiff, ran its south-bound train No. 31 at an unlawful rate of speed, to wit, twenty-five miles per hour, over and upon a track not usually traveled by said train, and about one hour out of schedule time, without sounding the whistle or ringing the bell, and, without giving any warning or notice to plaintiff; that said train ran into and struck the plaintiff from the rear, severely injuring him, while he was watching an incoming train from the opposite direction on the immediately adjoining track, to wit, the north main track; that the plaintiff's injuries were caused by the negligence of said defendant in not furnishing plaintiff with a safe and suitable place in which to work, in putting him in a dangerous place, and in not using care commensurate with the danger to which it exposed him, by running said train No. 31 at an unlawful rate of speed, in violation of a city ordinance, on the wrong track, out of schedule time, recklessly in a place of danger, through deep darkness and dense fog, without ringing the bell, sounding the whistle, or giving any warning to plaintiff of the approaching danger.

The sufficiency of this complaint is attacked upon the following grounds: (1) That there is no allegation that appellee was without knowledge of the danger, and that he did not assume the risk; (2) that it is not shown that appellant owed appellee any duty which it violated, or any duty to run its train on schedule time, or within the rate of speed prescribed by ordinance, nor is it shown that the increased rate of speed was the proximate cause of the injury, nor that the company owed appellee any duty, or violated any duty, as to giving signals, nor that he would have heeded the signals if they had been given, nor that any of the acts alleged to have been negligent had anything to do, in relation to cause and effect, with appellee's injuries; (3) that it affirmatively shows that, if not a trespasser, appellee was a licensee to whom appellant owed no duty, and that he was

bound to accept the conditions as he found them; (4) that it shows appellee to have been negligent in selecting the place he did; (5) that it does not show that appellee was acting upon an order under which he went upon the tracks where he was injured; (6) that appellee had no right to rely on the departure of train No. 31 upon its schedule time.

Upon oral argument it was declared by counsel for appellee that the complaint is based upon the common-law liability, and not upon the employers' liability act, so that the question of the order is immaterial as to that feature of the case.

There is, as will be seen, no allegation in the complaint that appellee did not know of the danger attending his entry into the switch yard, and it is well settled that the plaintiff must aver his want of knowledge of the danger. *Chicago, etc., R. Co.* v. *Barnes* (1905), 164 Ind. 143; *Indianapolis, etc., Transit Co.* v. *Foreman* (1904), 162 Ind. 85, 102 Am. St. 185; *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607; *Cleveland, etc., R. Co.* v. *Parker* (1900), 154 Ind. 153; *Chicago, etc., R. Co.* v. *Glover* (1900), 154 Ind. 584; *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297; *Pennsylvania Co.* v. *Ebaugh* (1899), 152 Ind. 531; *Louisville, etc., R. Co.* v. *Kemper* (1897), 147 Ind. 561; *Potter* v. *Knox County Lumber Co.* (1896), 146 Ind. 114; *Peerless Stone Co.* v. *Wray* (1896), 143 Ind. 574; *Big Creek Stone Co.* v. *Wolf* (1894), 138 Ind. 496; *Louisville, etc., R. Co.* v. *Corps* (1890), 124 Ind. 427, 8 L. R. A. 636; *Louisville, etc., R. Co.* v. *Sandford* (1889), 117 Ind. 265.

This averment must be as broad as the averment of defendant's knowledge thereof.

The plaintiff must disclose an absence of knowledge of the defects or omissions of which he complains. *Louisville, etc., R. Co.* v. *Kemper, supra; Chicago, etc., R. Co.* v. *Glover, supra; Pennsylvania Co.* v. *Ebaugh, supra; Peerless Stone Co.* v. *Wray, supra; M. Rumely Co.*

v. *Myer* (1907), 40 Ind. App. 460; *Baltimore, etc., R. Co.* v. *Hunsucker* (1904), 33 Ind. App. 27.

Where the specific facts alleged show a knowledge of danger, or the same opportunity for knowledge as the master, these facts will overcome a general allegation of want of knowledge. *Louisville, etc., R. Co.* v. *Kemper, supra; Peerless Stone Co.* v. *Wray, supra; M. Rumely Co.* v. *Myer, supra; Baltimore, etc., R. Co.* v. *Hunsucker, supra; Ames* v. *Lake Shore, etc., R. Co.* (1893), 135 Ind. 363; *Myers* v. *W. C. DePauw Co.* (1894), 138 Ind. 590; *Corning Steel Co.* v. *Pohlplatz* (1902), 29 Ind. App. 250.

Applying the rule that a pleading is construed most strongly against the pleader, it is impossible to avert the conclusion that it is shown by the complaint that appellee had as full knowledge as appellant of the condition of the yards, the switching and running of fast trains through them, and of the danger of passing through them, and if that fact alone is sufficient to render a complaint bad, this complaint is clearly bad, for there is no pretense of an allegation of the lack of such knowledge. It is shown that appellee was in the employ of appellant, and that there was no other way of reaching the assembling place; that for several days appellee had with others assembled there, hence the condition of the yard was open and visible, and the dangers which appellee describes were necessarily continuous and apparent, even to casual observation. It is also settled that where the servant has equal knowledge with the master of a defect, there can be no recovery, unless there be a promise to repair or remedy the defect, or remove the cause of the danger, or some excuse shown which justifies reliance by the servant. *Big Creek Stone Co.* v. *Wolf, supra.*

It is at this point, however, where the cleavage of the line of cases occurs. It is very generally settled that an author-

ized ordinance of a municipal corporation has the force of a legislative act upon those upon whom it operates. *Pittsburgh, etc., R. Co.* v. *City of Hartford City* (1908), 170 Ind. 674; *Indiana R. Co.* v. *Calvert* (1907), 168 Ind. 321, 10 L. R. A. (N. S.) 780; *Lane* v. *Atlantic Works* (1872), 111 Mass. 136; *Graham* v. *President, etc.* (1887), 46 Hun 386; *Van Norden* v. *Robinson* (1887), 45 Hun 567; *McGrath* v. *New York, etc., R. Co.* (1876), 63 N. Y. 522; *Jetter* v. *New York, etc., R. Co.* (1865), 2 Keyes 154; 1 Dillon, Mun. Corp. (4th ed.), §§308, 393, note.

We have a distinct line of cases in this State, as applied to master and servant, holding that, where a statutory duty is disregarded by the master, it is not necessary that the complaint allege that the servant was ignorant of the master's failure to comply with such statute, nor allege facts showing that he did not assume the risk. *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413; *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 58 L. R. A. 944; *Island Coal Co.* v. *Swaggerty* (1903), 159 Ind. 664; *Davis Coal Co.* v. *Polland, supra*. The doctrine of assumed risk does not apply, as against a statute or an ordinance. *Indianapolis Union R. Co.* v. *Waddington* (1907), 169 Ind. 448.

In *American Rolling Mill Co.* v. *Hullinger* (1904), 161 Ind. 673, the distinction is pointed out between these two lines of cases, and also between cases arising under the employers' liability act, in which the doctrine of assumed risk still obtains as to some of the provisions, and cases of violation of a statute in which it does not.

Appellee alleges the existence of an ordinance limiting the speed of trains to twelve miles per hour, and that train No. 31 was a regularly scheduled train; that he was familiar with the time of its departure from the station at Greensburg, and the track upon which it usually ran; that on the morning in question it was run about one hour out of schedule time, on a different track from that usually taken by it.

at a rate of twenty-five miles per hour, without sounding the whistle, or ringing the bell, or giving any signal, warning or notice to plaintiff, and ran into him from the rear, as he was watching an incoming train from the opposite direction on an immediately adjoining track.   It is alleged that appellee's injuries were caused by the negligence of the appellant in not furnishing appellee a safe and suitable place in which to work, and in putting him in a dangerous place, and in not using care commensurate with the danger to which he was exposed by the running of said train No. 31 at an unlawful speed, in violation of a city ordinance, on the wrong track, out of schedule time, recklessly, in a place of danger, through deep darkness, thick fog, and without ringing the bell, sounding the whistle, or giving any warning to appellee of the approaching danger.   The running of

7.   the train in violation of the ordinance was negligence *per se.   Chicago, etc., R. Co.* v. *Lawrence* (1907), 169 Ind. 319; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247; *Baltimore, etc., R. Co.* v. *Peterson* (1901), 156 Ind. 364; *Pennsylvania Co.* v. *Horton* (1892), 132 Ind. 189; *Pennsylvania Co.* v. *Hensil* (1880), 70 Ind. 569, 36 Am. Rep. 188; *Central R., etc., Co.* v. *Brantley* (1893), 93 Ga. 259, 20 S. E. 98; *Bluedorn* v. *Missouri Pac. R. Co.* (1891), 108 Mo. 439, 18 S. W. 1103, 32 Am. St. 615; *Bluedorn* v. *Missouri Pac. R. Co.* (1894), 121 Mo. 258, 25 S. W. 943; *Hays* v. *Gainesville St. R. Co.* (1888), 70 Tex. 602, 8 S. W. 491, 8 Am. St. 624; *Fath* v. *Tower Grove, etc., Railway* (1891), 105 Mo. 537, 16 S. W. 913, 13 L. R. A. 74; 1 Thompson, Negligence (2d ed.), §10; 3 Elliott, Railroads (2d ed.), §1155.

An employe of a railroad company, who is where he has a right to be, has a right to rely upon the belief that a city ordinance regulating the speed of trains will be observed. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438; *Pittsburgh, etc., R. Co.* v. *Moore* (1899), 152 Ind. 345, 44 L.

R. A. 638; *Baltimore, etc., R. Co.* v. *Peterson, supra.* In the case last cited, a complaint similar in its material allegations to the one at bar was held sufficient.

In view of the distinction between violations of statutes or ordinances and those cases where these conditions are absent, we think the complaint in this case is not bad for failure to negative the assumption of risk.

The question of choosing an unsafe place in which to work is not presented upon the complaint, for it is alleged that "there was no way to reach such office without passing on and over such tracks through such yard," and that appellee was not working there, but was going to work. Appellee was not a trespasser, and was more than a licensee. If there was no other way of reaching the place to which he was directed to go, that amounted to an implied, if not an express, invitation, and it is alleged that appellant at that time, "and for a long time prior thereto, permitted its employes to pass and repass over said tracks in said yard, in going to and returning from said office, and that such use was with the knowledge and consent of said defendant." An invitation is implied where some benefit accrues or is supposed to accrue to the party extending the invitation, or is in the interest of both parties, or consists in going upon premises upon the business of the owner. *Northwestern, etc., R. Co.* v. *O'Malley* (1903), 107 Ill. App. 599; *Plummer* v. *Dill* (1892), 156 Mass. 426, 31 N. E. 128, 32 Am. St. 463; *Dixon* v. *Swift* (1903), 98 Me. 207, 56 Atl. 761; 29 Cyc., 454.

In other words, where a servant in going to his work has but one way to go, as is here alleged, and that way is upon the master's premises, and is dangerous, and the servant knows it, and knowledge of the danger and of the use of the way is alleged to have been known to the master, the servant is more than a licensee, and he cannot, as a matter of law, be said to have assumed the risk, or been negligent in so doing, where the negligence counted on is the

running of a train in violation of an ordinance, owing to the rule that in such case there is no assumption of the risk.

It was not necessary under the statute that appellee show himself to have been free from negligence. §362 Burns 1908, Acts 1899, p. 58. But neither this, nor the lack of an allegation negativing the assumption of the risk, conclusively establishes his right of recovery, for not only must he have been free from negligence as a matter of fact, and not an assumer of the risk, but the negligence complained of must have been the proximate cause of his injury. *Richmond St., etc., R. Co. v. Beverley* (1909), 43 Ind. App. 105; *Grand Trunk, etc., R. Co. v. Melrose* (1906), 166 Ind. 658; *Nickey v. Steuder* (1905), 164 Ind. 189; *Baltimore, etc., R. Co. v. Young* (1896), 146 Ind. 374; *Toledo, etc., R. Co. v. Beery* (1903), 31 Ind. App. 556.

That appellee had no right to rely upon the schedule of trains, nor the tracks usually taken, is settled by many cases. *Cincinnati, etc., R. Co. v. Howard* (1890), 124 Ind. 280, 8 L. R. A. 593, 19 Am. St. 96; *Rich v. Evansville, etc., R. Co.* (1903), 31 Ind. App. 10; *Beyel v. Newport News, etc., R. Co.* (1890), 34 W. Va. 538, 12 S. E. 532; *Wilcox v. Rome, etc., R. Co.* (1868), 39 N. Y. 358, 100 Am. Dec. 440; *Salter v. Utica, etc., R. Co.* (1878), 75 N. Y. 273; *Toledo, etc., R. Co. v. Jones* (1875), 76 Ill. 311; *Judson v. Great Northern R. Co.* (1895), 63 Minn. 248, 65 N. W. 447; *Lake Shore, etc., R. Co. v. Frantz* (1889), 127 Pa. St. 297, 18 Atl. 22, 4 L. R. A. 389; *Jennings v. St. Louis, etc., Co.* (1892), 112 Mo. 268, 20 S. W. 490; *Schofield v. Chicago, etc., R. Co.* (1885), 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; *Durbin v. Oregon R., etc., Co.* (1888), 17 Ore. 5, 17 Pac. 5, 11 Am. St. 778; *Duncan v. Missouri Pac. Co.* (1891), 46 Mo. App. 198.

The contention is thus narrowed down to the propositions, that the operation of the train was negligent, that appellee,

under the allegations of the complaint, was where he
9.   had a right to be, that appellant owed him the duty of
reasonable care not to injure him. *Chicago, etc., R.
Co.* v. *Cunningham* (1904), 33 Ind. App. 145; 2 Thompson,
Negligence (2d ed.), §1719.

Whether the proximate cause of the injury is shown to
be the running of the train as alleged, leads to the inquiry,
What is proximate cause and what is essential to show
14.   it? "One is bound to anticipate and provide against
what usually happens and what is likely to happen;
but it would impose too heavy a responsibility to hold him
bound in like manner to guard against what is unusual and
unlikely to happen, or what, as it is sometimes said, is only
remotely and slightly probable." *Stone* v. *Boston, etc., R.
Co.* (1898), 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794.
"The question is never whether the result is possible, but
what is probable; that is, Would it appear probable accord-
ing to common experience and observation?" *P. H. & F.
M. Roots Co.* v. *Meeker* (1905), 165 Ind. 132. "The true
rule is, that what is the proximate cause of an injury is ordi-
narily a question for the jury. It is not a question of science
or of legal knowledge. It is to be determined as a fact, in
view of the circumstances attending it. * * * The ques-
tion always is, Was there an unbroken connection between
the wrongful act and the injury, a continuous operation?"
*Milwaukee, etc., R. Co.* v. *Kellogg* (1876), 94 U. S. 469, 24
L. Ed. 256. "If an efficient and adequate cause is shown, it
may be considered as the real or proximate cause, unless an-
other, not incidental to it, but independent thereof, appears
to have intervened and caused the accident or injury in con-
troversy." *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind.
413. See, also, *Indianapolis St. R. Co.* v. *Schmidt* (1904),
163 Ind. 360; 4 Thompson, Negligence (2d ed.), §3857.
"The proximate cause of an accident or injury is sometimes
described as the immediate cause, the nearest cause, the
actual or direct cause, or the efficient cause." *Indianapolis*

*St. R. Co.* v. *Schmidt, supra.* "The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation." *Aetna Ins. Co.* v. *Boon* (1877), 95 U. S. 117, 24 L. Ed. 395. "Whether this breach of duty [violation of an ordinance] caused the injury [was the real, efficient, or proximate cause] was to be determined by the jury." *Baltimore, etc., R. Co.* v. *Reynolds* (1904), 33 Ind. App. 219. "The proximate cause of an injury may in general be stated to be  *  *  *  an act or omission occurring or concurring with another, which, had it not happened, the injury would not have been inflicted, notwithstanding the latter." 6 Words and Phrases, 5759. "The term 'proximate' indicates that there must be no other culpable and efficient agency intervening between the defendants derelictions and the loss." 6 Words and Phrases, 5758. "When two causes unite to produce the loss, the question that remains is, Which was the proximate cause?" *Blythe* v. *Denver, etc., R. Co.* (1890), 15 Colo. 333, 25 Pac. 702, 11 L. R. A. 615, 22 Am. St. 403.

It will scarcely be contended that it would have been proper for the court to say to the jury that the excessive speed at which the train was run raised a presumption, as a matter of law, that such speed caused the injury. *Bluedorn* v. *Missouri Pac. R. Co.* (1894), 121 Mo. 258, 25 S. W. 943. Conversely, we cannot say that the presumption or inference is that appellee's injury was occasioned by his failure to see and avoid the train. It was for the jury, under all the circumstances, to determine whether the speed of the train was the proximate cause of the injury, or whether some efficient, immediate cause, or some failure or omission on the part of appellee, was the proximate cause.

It will be remembered that this is a question of pleading, where the assumption of risk is not involved, and in which the burden of pleading contributory negligence was upon appellant. No intermediate cause for the injury was disclosed. It seems impossible to escape the

conclusion that, in the absence of the questions of the assumption of risk, and of contributory negligence, the proximate cause—an efficient, adequate cause, a probable result to be apprehended from the rapid movement of the train in the particular locality—is sufficiently disclosed. The failure of appellant to observe its duty with respect to the ordinance, being negligence *per se,* appellant was liable, unless appellee was guilty of contributory negligence; and contributory negligence not appearing by the allegations of the complaint, and such negligence not being required to be negatived, the question thereof clearly becomes one for the jury. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 457.

The violation of a rule by an employe will not preclude a recovery, precisely as the violation of an ordinance by the company will not warrant a recovery, unless such violation was the proximate cause of the injury. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438.

The complaint cannot be held bad because of conjectures as to whether appellee would have heeded signals or warnings, or by reason of what he might have seen, heard or done to avoid the consequences of the negligence attributed to appellant. *Indianapolis Union R. Co.* v. *Waddington, supra; Baltimore, etc., R. Co.* v. *Peterson, supra.* It seems certain therefore, that the question of the proximate cause of the injury is one for the jury.

The assignment of errors, after the formal designation of the court, and the names of the parties, is in the following form: "The above-named appellant says there is manifest error in the proceedings and judgment in this cause in this," setting out the different causes. It is claimed that the assignment of errors presents no question, for the reasons "(1) that it does not allege that the errors complained of were prejudicial to the appellant; (2) that the assignment does not disclose whether the errors complained of were favorable to or against appellant; (3) that

the assignment must show errors prejudicial to the rights of appellant." These contentions are without force. To say that "there is manifest error in the proceedings and judgment * * * in this," specifying the alleged errors, covers the whole ground. Appellant must show the error, if any, and unless prejudicial to it, it is of no avail. *Williams* v. *State* (1901), 157 Ind. 94; *Campbell* v. *State* (1897), 148 Ind. 527; *Trent* v. *Edmonds* (1904), 32 Ind. App. 432; Ewbank's Manual, §254.

The point is raised that the bill of exceptions is not in the record, on the ground that "a certificate of the clerk of the court certifying to the original longhand transcript of the evidence is insufficient to authenticate the bill of exceptions." The record affirmatively shows that on July 30, 1908, in vacation, appellant filed in the office of the clerk of the Decatur Circuit Court "its bill of exceptions number one, the same being the typewritten copy of the evidence * * * which said bill of exceptions had on July 29, 1908, been signed, sealed and settled by the judge who tried the cause, in words and figures as follows"—and it is then set out. The bill is properly certified, authenticated and signed by the trial judge, as of the date July 29, 1908; the precipe calls for a complete transcript, except the bill of exceptions containing the evidence, which it directs to be certified without copying. The certificate of the judge recites that the bill of exceptions contains all the evidence given in the cause, and the bill is clearly not excluded on those grounds.

Numerous instances are shown where, upon the propounding of a question, objection was interposed, and, after leave was given the witness to answer, no answer is shown, nor was any required. In others, before questions were completed, objections were interposed, and the question was not finished. In others, the record has a note that there was no answer that the reporter caught. The point is insisted upon that the bill of exceptions on its face

shows that it does not contain all the evidence. In none of them is there any implication that there was an answer. In some, the questions following indicate that there were no answers, and in those cases where the record recites "no answer that the reporter caught," we cannot say that there was an answer. The practice is bad, for the reason that it might be argued that the statement indicates that there was some answer, and it is possibly open to that construction; but if the reporter could not hear it, with his better facilities than a jury, we cannot say that it went to the jury, or that it was evidence, for clearly it should be sufficiently distinct so that each juror could hear.

In several instances a map designated as exhibit 1 was referred to by witnesses, and they testified about it, and in one instance a diagram was referred to. The context 22. shows this diagram to have been a map of appellant's yard, and a map was introduced in evidence, and is set out as exhibit 2. There is nothing to show that the diagram or exhibit 1 was given in evidence, and every indication that the map designated as exhibit 2, when given in evidence, was the same map as the diagram and exhibit 1, or a duplicate of it. The bill of exceptions is not shown to be deficient in any of these particulars.

The point is made by appellee that the instructions are attempted to be brought into the record under §561 Burns 1908, Acts 1907, p. 652, and that a memorandum of 23. the instructions given and refused is not signed by the judge. In this counsel are in error. They also claim that as to the instructions requested by appellee, and given by the court, no question is presented, for the reason that there is no memorandum of exceptions at the close of the instructions, dated and signed by the attorneys. There are, under our statutes, at least three ways of bringing instructions into the record: (1) By a bill of exceptions; (2) by exceptions "taken orally and entered upon the record or minutes of the court;" (3) by exceptions "in writing at

the close of instructions requested by the parties or given by the court of its own motion; but in the latter instance the party excepting, or his counsel, shall enter at the close of such instructions a memorandum which shall be dated and signed, setting forth, in substance, that such party excepts to the giving or refusing, as the case may be, of each of the instructions, designated by number." In the two latter cases, if the instructions shall be filed with the clerk, they, with the entries respecting them, shall be a part of the record. §561, *supra.* The record shows affirmatively that as to each of the instructions requested by appellee and given, and as to each of the instructions requested by appellant and refused, appellant's exception was taken orally, and entered upon the record.

Appellee relies upon the provision of §561, *supra,* as sustaining its contention that the instructions given by the court upon its own motion are not brought into the record, for the reason that where, upon request, they are given in writing they "shall be numbered consecutively, and signed by the judge." The instructions given by the court of its own motion are numbered consecutively, but not signed by the judge. The statute provides a specific method of identifying such instructions, and is manifestly mandatory, and we cannot ignore it, though all the instructions given and refused are shown to have been filed and made a part of the record.

The court, at appellee's request, gave the following instruction: "(25) When several acts of negligence are sufficiently alleged in a complaint, it is not necessary that all of such acts must be proved to entitle the plaintiff to recover; but a recovery will be justified if it is established that the injury complained of was the result of one or more of said acts of negligence. Therefore, if you believe from the evidence that the plaintiff has proved by a preponderance of the evidence that the injury complained of was caused by any one or more of said acts of

negligence alleged in his complaint, then you should find for the plaintiff, if you further find that the plaintiff was without fault.''

We hold the complaint good in this cause, upon the ground that it charges the violation of a speed ordinance as showing the proximate cause of the injury, and but for that charge of negligence as the proximate cause of the injury we should be forced to hold the complaint bad. Hence it is plain that the other grounds of negligence charged present no cause of action, and a recovery cannot be had for them under this complaint. The error in giving this instruction could not possibly have been cured by any supposable instruction that may have been given, for if any instruction was given, limiting the right of recovery to the negligence in disobeying the speed ordinance, it was in direct conflict with this instruction, and the jury could not be otherwise than wholly uninformed and misled as to the sole ground of negligence which authorized a recovery. The record shows affirmatively that this instruction was given, and there is no showing or pretense of showing its withdrawal. Nothing short of withdrawal would cure the error. *Treager* v. *Jackson Coal, etc., Co.* (1895), 142 Ind. 164; *Marshall* v. *Lewark* (1889), 117 Ind. 377.

With respect to the negligence in operating the train at an unlawful rate of speed, appellee did not assume the risk, assuming that he was where he had a right to be; but if the negligence relied on for recovery is other than that negligence, then the doctrine of the assumption of risk applies. But the jury was told that ''if it is shown by a preponderance of the evidence that the injury was caused by any one or more of said acts of negligence alleged in his complaint, then you should find for the plaintiff, if you further find that the plaintiff was without fault.'' It is perfectly plain that if appellee was where he had a right to be, in one particular of negligence alleged—that of unlawful speed of the train—he did not assume the risk; while

as to the other acts of negligence alleged, he would necessarily assume the risk, with no allegation as to any duty owing him as to those matters, and, so far as the complaint is concerned, he discloses that they are obvious dangers, for he alleges the dangers and the conditions of weather, which are obvious. It cannot be discovered from the answers to the interrogatories that the recovery is based upon the unlawful rate of speed, as the proximate cause of the injury, and the judgment cannot be upheld as to other alleged acts of negligence, as to which no good cause of action is stated.

Objection is made to other instructions, as being in conflict, but an examination discloses that they grow out of the use of the words "in the line of his duty" in some instructions, leaving the question of whether he was in the line of his duty to be ascertained from other instructions, which mark the distinction between being "in the line of his duty," and merely being in a place of his own choosing for his own purposes, as well as the question of choosing a safe or an unsafe way.

The instructions are voluminous, and no good purpose can be subserved in setting them out or discussing them. The answers to the interrogatories are conflicting, and justice demands a new trial. It is so ordered.

## On Petition for Rehearing.

Myers, J.—The learned counsel for appellee have made an earnest appeal for a rehearing in this cause, basing their application upon the proposition that we were in error 25. in holding the twenty-fifth instruction harmful, ·for the reason that the one act of negligence—the violation of the speed ordinance—is sufficiently pleaded, and that the verdict is shown by the interrogatories to rest upon that allegation of negligence, by the finding that the speed of the train was twenty miles per hour, the ordinance limit being twelve. It is true, as we held, that the one act of neg-

ligence sufficiently pleaded was the violation of the speed ordinance, but the difficulty with appellee's position arises not from the application of the rule he invokes, but from the allegations of the complaint that "his injuries were caused by the negligence of the defendant in not furnishing plaintiff a safe and suitable place in which to work, in putting him in a dangerous place, and in not using care commensurate with the danger to which it exposed him, by running said train No. 31 at an unlawful speed, in violation of a city ordinance, on the wrong track, out of schedule time, recklessly in a place of danger, through deep darkness and dense fog, without ringing the bell, sounding the whistle, or giving any warning to plaintiff of the approaching danger," coupled with the instruction that "if the injury complained of was caused by any one or more of said acts of negligence," and he was without fault, they should find for the appellee. If we eliminate from the complaint all the alleged acts of negligence except the one well pleaded, it would read: "His injuries were caused by the negligence of the defendant in running said train No. 31 at an unlawful rate of speed, in violation of a city ordinance, recklessly in a place of danger," etc. This instruction wholly fails to separate the negligence charged in running the train in violation of the ordinance in which no question of assumption of risk is involved from the other alleged acts of negligence in which that question is involved, and, taken with the finding on the question of care, places the latter as depending upon a false basis.

If the answers to the interrogatories had shown only negligence in the matter of the violation of the speed ordinance, appellee's position would have force; but they go much further. The jury finds that appellee was traveling a usual way in going to his work (not while engaged at work), known to appellant to be so used by the men employed; that it would have been unsafe and dangerous for him to stand between the tracks; that the train was off its schedule

forty minutes, and was running over a track not usually taken by it; that the space between the main tracks was unsafe to walk in, owing to loose, uneven gravel, boulders and cinders, and the same was true as to the space north of the west-bound track; that appellee knew the leaving time of the train, and did not know whether it had gone; that he saw the east-bound train on the west-bound track, or the track usually taken by train No. 31; that he knew that the latter was frequently late, and was liable to pass at any time, if it had not yet gone; that appellee might have gone in such way as not to pass through the yards, but that such ·way was not as safe and convenient as through the yards, owing to obstructions such as elbow pipe, ditches, mud and water, and the east leg of the ''Y''; that appellee traveled 1,200 feet on the east-bound track, then, to escape rapidly approaching train No. 41, he stepped between the rails of the track on which train No. 31 was running, and within two hundred feet of train No. 31, upon which the headlight was burning; that he walked thirty feet before being struck; that no train was scheduled to run on the track on which he stepped, and he believed none would run on said track—and that that was the exercise of the greatest possible care.

Appellee argues that as one of the acts of negligence charged was the unlawful speed, it is sufficient that the jury find that fact, and that the general verdict covered the fact of contributory negligence, and that the other findings may be ignored. If it stood upon the question whether the findings support the judgment upon the question of the violation of the speed ordinance, we should unhesitatingly say that they are sufficient, but it does not so stand; for from all the findings it is impossible to say, under the instruction, whether it is predicated upon the speed ordinance, or on the other facts found, and we are asked to eliminate the latter, and conclude that the judgment should be upheld upon the unlawful speed rate, because that is the sole cause of action sufficiently pleaded, which is equivalent to saying that if

there is one good paragraph of a complaint, or one cause of negligence sufficiently pleaded, it is wholly immaterial that a jury is told that it should find for the plaintiff, if it finds the facts as set forth in any paragraph, though it is bad, or any of the causes pleaded, though all are insufficiently pleaded save one, and that the judgment should be upheld, because among the other facts specially found, and which the jury is told are equally potent, are found the facts in the good paragraph, or the one cause sufficiently pleaded.

27. Though the burden of showing contributory negligence was upon appellant, that fact, if it exists, might be shown by any evidence in the cause. Whether the going upon the west-bound track, after eliminating from consideration the want of right in appellee to rely upon the train's not running on that track, and out of schedule time, was or was not negligence, or the proximate cause of the injury, was a question for the jury, even though the running of the train was negligent, but the instruction is bad in leaving those facts before the jury, as not involving any question of proximate cause or contributory negligence. The point was not made by appellant as to error in instruction No. 25 as withdrawing the question of contributory negligence or proximate cause, and was not mentioned in the opinion, but was considered upon the question as to whether, under the answers to the interrogatories, the general verdict, and the complaint, the judgment could be affirmed, and is only adverted to here to point out the harm. The finding shows affirmatively that the care used by appellee was such care as was based on his going on a track "where no train was scheduled to run, and where he believed none would run," when he had no right to rely on those facts. In the absence of that finding we might be justified in holding that the general verdict supplied the deficiency, and covered the subjects of contributory negligence and proximate cause.

It must be borne in mind that the question is not of the

sufficiency of the findings to support the judgment, but whether the instruction was harmless. In other words, with the other facts which are found by the jury the subject of consideration by it upon the question of contributory negligence, can we say that it must necessarily have found for appellee by its general verdict, irrespective of the instruction? Or is the fact of the violation of the speed ordinance so connected with the facts as to the place's being unsafe, the train's being on a track not usually taken by it, and off its schedule forty minutes, that they may have been as controlling in the mind of the jury on the question of contributory negligence as the violation of the speed ordinance was upon the question of the negligence of defendant?

The fact, that the jury is told by the instruction that appellee must appear to have been without fault, was of no consequence, when the acts which are pleaded as adjuncts of the one sufficiently pleaded cause are in and of themselves of such character as to remove the question as to his being at fault, for the jury is, in effect, told that those acts are sufficient in themselves to warrant a finding for appellee. The question of contributory negligence, which was the question around which the contest was waged, was practically eliminated. It is therefore not like a case of a good paragraph and a bad one, with a finding on each, or such a state of the record as to show a finding on the good paragraph, or a finding upon one sufficiently pleaded fact, even though there was also a finding on the others. It is not a question of the sufficiency of the finding, but of the effect of the instruction upon which the finding was based.

The jury may well have concluded that appellee was without fault, because he was where he had a right to be as alleged, and the train was off its schedule time, and upon a track not usually taken by it. The harm in the instruction taken with the findings arises from the practical elimination of the questions of proximate cause and contributory negli-

gence in connection with the sufficiently pleaded act, for while it charges that the plaintiff must be free from fault, it also in effect tells them, that he would not be in fault if he was where he had a right to be, or if the train was off its schedule time, or on a track not usually taken by it. So it cannot be said that the verdict is a finding against appellant on the question of contributory negligence. According to appellee's theory and the findings, if the train had been on time, or if it had been on the track usually taken by it, neither of which facts had he a right to rely upon, appellee would not have been injured by it. Hence is seen the importance of the element of contributory negligence claimed by appellant in appellee's going on the west-bound track.

Complaint is also made of our statement as to the interrogatories, being conflicting, and as to justice demanding a new trial. This statement was made from the fact that appellant insisted that it was entitled to a judgment upon the answers to the interrogatories, as showing contributory negligence. Applying the same rule that we do here, that we cannot say from the findings under instruction twenty-five, either that there was a finding against appellant on the question of contributory negligence, or that there was a finding in its favor, it was manifestly unjust that it should have judgment on the answers to the interrogatories, and that a new trial ought to be allowed.

On the question of the conflict of the answers to the interrogatories, the jury found that appellee was traveling the usual route to the office "in obedience to the orders" of the foreman; it also found what the order was, and that it was "to report for duty at the yard office;" that "his effort to leap from the east-bound track when a train was approaching, over to the west-bound track where no train was scheduled to run, and where he believed none would run, was an exercise of the greatest possible care;" that he had no "warning or notice of the approach of said train in time to escape it;" that he "knew the leaving time

from Greensburg of said train No. 31;'' that he did not know whether ''train No. 31 had gone, or was late;'' that if it had not gone he knew ''that it was liable to go at almost any time;'' ''that for some time train No. 31 had been leaving Greensburg late;'' that a ''train was liable to come along upon either of the main tracks at any time.''

It will thus be seen that with these findings, in which is included the circumstances under which appellee was where he was, the character of the alleged order, the care he exercised with reference to stepping from one track to another, are included the findings on the question of the train's being off its schedule, and on a track not usually taken, neither of which had he any right to rely upon, and if not, the question of contributory negligence was involved in his so doing, as it was also in the question of the character of the order, and so involved, that we cannot say that it was covered by the general verdict, because a wrong basis was given to the jury for determining the question. So far as anything here appears, he might have been injured had the train been running not to exceed twelve miles an hour, and as the jury finds that he walked thirty feet after entering upon the track, and the train was running twenty miles an hour, and was 200 feet away when he entered upon the track, it would cover the distance in about eight seconds, and running at twelve miles an hour would cover it in about thirteen seconds, and the question whether he was or was not negligent was one for the jury, without taking into consideration that the train was on a track not usually taken, and was off its schedule time. Whether he used ordinary care, or the highest degree of care, in stepping from one track to another, must be determined by the duty owing to him by the appellant. If it owed him no duty with respect to the train's traveling upon one track or another, or upon or off its schedule time, and the jury was told, in effect, that the duty was owing to him, when, as a matter of law, it was not, and he had no right to rely upon it, as the answers show he did, the element of con-

tributory negligence was practically eliminated, even as to the findings which would otherwise support the judgment, as was also the assumption of risk, which is directly involved in all the alleged acts of negligence, except the violation of the speed ordinance.

It is also insisted that the error urged by appellant as to instruction twenty-five was only as to its ignoring the assumption of risk. That point was definitely made and argued. Appellant was clearly right in that contention, if any act was charged other than the speed of the train to be the basis of recovery. The jury was told, in effect, that any one of them would be the subject of recovery, if found to exist, irrespective of the question of the assumption of risk. It is not sufficient, as counsel urge, that "the record affirmatively shows that the issue of the violation of said speed ordinance entered into and formed a part of the general verdict in favor of appellee." That fact is not sufficient in itself. True, a general verdict would cover it, and be sufficient standing alone; but when it affirmatively shows that other facts of controlling importance in producing a verdict entered into it, which have no place in it, and cannot be considered, and the jury is told that they may be, the verdict cannot be upheld. The jury may have found for appellee on the question of contributory negligence, solely by reason of the erroneous charge, under which the question of assumption of risk was ignored, and with which, as the record stands, contributory negligence and proximate cause are inseparably connected. *Merriman* v. *Merriman* (1899), 153 Ind. 631.

We think our original opinion was correct upon the record, and the petition is denied.